MARY RYTHER, Appellant, *v.* FRANCES C. LEFFERTS, Respondent, Impleaded with KATHARINE A. KENNEY, Defendant.

First Department, June 12, 1931.

*W. H. K. Davey* of counsel [*Burger & Burger*, attorneys], for the appellant.

*Julian C. Harrison* of counsel [*Reiley, Harrison & Reinhardt*, attorneys], for the respondent.

SHERMAN, J. Plaintiff pleads that in June, 1923, she became engaged to marry one Brevoort, and that defendants, knowing of the engagement which then existed, conspired to induce Brevoort to refuse to marry her, and by means of various acts and false statements maliciously brought it about that Brevoort refused to perform his contract of marriage, and, instead, consorted with one of the defendants. The complaint sets forth many unnecessary evidentiary facts which are not requisite to a proper statement of her alleged cause of action.

Plaintiff attempts to sustain this complaint by applying the reasoning which underlies the well-known case of *Lumley* v. *Gye* ([1853] 2 El. & Bl. 216), where a defendant was held liable in damages

for inducing an opera singer to refuse to perform an engagement made with plaintiff. In that case, liability was said to arise because of the relationship of master and servant between the plaintiff and his employee.

Since that decision, the view that maliciously to procure a breach of contract constitutes a tort for which damages may be laid against the one who procures the breach, has been widely extended to embrace a great variety of causes, regardless of the nature of the contract. (*Temperton* v. *Russell*, L. R. [1893] 1 Q. B. 715.) The basis of the decision in *Lumley* v. *Gye* (*supra*) was explained by Lord MACNAGHTEN in *Quinn* v. *Leathem* (L. R. [1901] A. C. 495, 510): " I think the decision was right, not on the ground of malicious intention,— that was not, I think, the gist of the action — but on the ground that a violation of a legal right committed knowingly is a cause of action, and that it is a violation of legal right to interfere with contractual relations recognized by law if there be no sufficient justification for the interference."

In applying this rule, extending the law of torts to actions for damages for unlawfully inducing a breach of contract, the Court of Appeals in *Hornstein* v. *Podwitz* (254 N. Y. 443, 447) cites *South Wales Miners' Federation* v. *Glamorgan Coal Co., Ltd.* (L. R. [1905] A. C. 239, 246), where it was said: " It is settled now that malice in the sense of spite or ill-will is not the gist of such an action." The real basis of the rule appears to be, not the malicious motive of the defendant, but the result achieved, to wit, the inexcusable invasion of the existing contract right of the plaintiff.

" The gist of the action is not the intent to injure, but to interfere without justification with plaintiff's contractual rights with knowledge thereof." (*Lamb* v. *Cheney & Son*, 227 N. Y. 418, 422.)

The question before us is whether or not the damage action for inducing a breach of contract is to be extended beyond the commercial phases to which it has been applied in the great majority of cases, and made to support a cause of action where the contract procured to be broken is an engagement of marriage. Such a contract should rest upon love and affection rather than upon mere commercial motives.

Marriage is an institution upheld and favored by the State as creating a status upon which rests the structure of society. Parties before entering upon that status should not be hindered in securing information and advice from all sources so that they may become thoroughly informed of all facts and circumstances which might affect the desirability of their union. If this form of action be extended, any one who may give advice or information to either of the contracting parties would do so at the peril of being

sued for inducing the breach. A field would be opened to distressing litigation. Third parties would be reluctant to speak and their self-interest would counsel silence.

As stated by Lord RIGBY in *Exchange Telegraph Company, Ltd., v. Gregory & Co.* (L. R. [1896] 1 Q. B. 147, 157, C. A.): " It is not, as I understand the law, every procuring of a breach of contract that will give a right of action. The nature of the contract broken must be considered." And JOYCE, J., in *National Phonograph Co. Ltd., v. Edison-Bell Consolidated Phonograph Co., Ltd.* (L. R. [1908] 1 Ch. 335, 350), in limiting its application conjectures the hypothetical case of possible liability where a man, aware that a lady is engaged to another, marries her and thereby prevents performance of her prior contract.

Likewise in *Long v. Smithson* ([1918] 88 L. J. K. B. 223, 226), SHEARMAN, J., says in the same vein: " If that principle is to be extended to every kind of contract, it produces remarkable results, and, as has been pointed out to us, it would enable a man who has been engaged to a lady who had jilted him to sue another person who married her."

The principle that a right of action exists against a person who maliciously procures another person to breach a contract for personal services has, as we have stated, been recognized and applied in this State to commercial contracts. (*Hornstein v. Podwitz*, 254 N. Y. 443; *Campbell v. Gates*, 236 id. 457; *Lamb v. Cheney & Son*, 227 id. 418; *Posner Co. v. Jackson*, 223 id. 325.)

In the only reported cases in this State, so far as we are aware, in which an attempt has been made to recover damages for inducing breach of a contract of marriage, the plaintiff failed of success. (*Guida v. Pontrelli*, 114 Misc. 181; *Stiffler v. Boehm*, 124 id. 55.)

In *Conway v. O'Brien* ([Mass. 1929] 169 N. E. 491) the question arose upon demurrer to the complaint, which alleged that the defendant, knowing of the existence of the agreement to marry to which the plaintiff was a party, maliciously and without probable cause procured her affianced to break the agreement. CROSBY, J., speaking for the Supreme Court of Massachusetts, concluded (p. 492): " Upon grounds of public policy we are of opinion that this action cannot be maintained. Although marriage is a civil contract, it is a relation between the parties which intimately concerns the welfare of society and the State, and the parents and other relatives and friends of the contracting parties ought to be free to advise them without incurring a liability to be called upon to respond in damages where such advice results in the breach of the contract to marry.

" Upon consideration of the authorities and of the principles

involved, we are of opinion that the ends of justice will be best served by holding that no action of this kind can be upheld. To decide otherwise would be to open the door to unwarranted litigation, to promote unfortunate engagements and to encourage unjustifiable attacks upon any relative or friend who could respond in damages. We are of opinion that a plaintiff is given an adequate remedy by having a right of action for slander or libel, as the case may be, whereby a contract to marry has been broken."

A like conclusion was reached by the Supreme Court of Washington in *Clarahan* v. *Cosper* (296 Pac. 140), where the defendant, himself a married man, became unduly attentive to plaintiff's *fiancée* who was employed by him, increased her salary so as to induce her not to marry plaintiff, and, after she had broken the contract to marry, admitted to the plaintiff that he had induced her to break that contract. The court, after denouncing the conduct of the defendant, held that "his soliciting and inducing appellants' *fiancée* to breach her contract to marry the appellant cannot impose upon him any legal liability;" and quoted with approval from the opinion in *Stiffler* v. *Boehm* (*supra*), "it is seriously to be doubted whether our courts would open the gate to its tribunals and thus invite a deluge of like litigation."

These recent decisions, as well as others (*Homan* v. *Hall*, 102 Neb. 70; *Ableman* v. *Holman*, 190 Wis. 112; *Leonard* v. *Whetstone*, 34 Ind. App. 383), indicate the present trend of authority toward denying validity to the cause of action attempted to be set forth in the complaint. Apparently, however, in some jurisdictions parents are exempted from liability for malicious interference with the marriage promise, but third parties are treated as intermeddlers and held in damages. (*Minsky* v. *Satenstein*, [N. J.] 143 Atl. 512; *Gunn* v. *Barr*, [1926] 1 Dom. L. R. [Alberta] 855.)

The conclusion reached by Dean Carpenter of the University of Oregon Law School (41 Harvard L. Rev. 750), after a review of many of the cases, sets forth the proper limitation of the rule: "Even in the absence of fraud, force, or defamation, not only may a parent induce his or her son or daughter not to marry a worthless or otherwise objectionable character but even a rival lover or stranger who induces a person under a contract to marry to break the contract is immune from liability. Neither parents, rivals, nor strangers have to show they were inducing the breach by way of advice or for the benefit of any of the parties concerned. Invasion of contracts to marry seems to be an exception to the general rule of liability for inducing breach of contract."

Well-established remedies remain open to plaintiff. She may sue Brevoort for damages for breach of his promise, and she has a

cause of action against the defendants for such slanderous or libelous words, if any, as may have been uttered by them concerning her.

The complaint was properly dismissed. The order appealed from should be affirmed, with ten dollars costs and disbursements.

FINCH, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.