GENEVIEVE ATTRIDGE, Respondent, v. WINFIELD P. PEMBROKE, Appellant.

Fourth Department, March 21, 1932.

*Charles Van Voorhis*, for the appellant.

*John J. McInerney*, for the respondent.

EDGCOMB, J. The amended complaint alleges that on July 11, 1925, the parties to this action entered into a contract wherein and whereby it was mutually agreed that, if the plaintiff would terminate and break her engagement to marry Harold E. Church, the defendant would pay her the sum of $100,000, and that the plaintiff has performed the terms and conditions of said agreement on her part to be performed, and has broken her engagement with said Church, but that the defendant has neglected and refused to pay her any part of said sum, except $20,250. Damages are demanded in the sum of $79,750, and interest.

Defendant moves, pursuant to rule 106 of the Rules of Civil Practice, to dismiss the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action, it being claimed

by the movant that the contract sued upon is void as against public policy for two reasons: (1) That it bound the plaintiff to do an illegal act, viz., to violate and break her contract with Mr. Church; (2) that the agreement was an unreasonable restraint of marriage. The Special Term has denied defendant's motion, and he appeals.

The complaint shows that, at the time of the making of the contract in suit, there was a valid agreement in force between the plaintiff and Harold E. Church wherein each had promised and agreed to marry the other, and that the defendant, by his alluring offer to give the plaintiff $100,000, had induced her to break her engagement.

The law favors the observance of a contract, and frowns upon its breach. Common honesty and sound morality demand that a party be compelled to live up to his agreement, if honestly and freely made. The court will not lend its aid to one who bases his cause of action upon his illegal act in breaking his contract with a third party. (*Hocking Valley Railway Co.* v. *Barbour*, 190 App. Div. 341; *Roberts* v. *Criss*, 266 Fed. 296; *Rhoades* v. *Malta Vita Pure Food Co.*, 149 Mich. 235.)

Plaintiff's act in repudiating her engagement with Church was deliberate and premeditated, and resulted in an illegal invasion of his contract interest. No justification for her conduct is alleged.

" It is the duty of all Courts of Justice," said Lord Chief Justice Wilmot in *Low* v. *Peers* (Wilmot's Notes, 364, 378), " to keep their eye steadily upon the interest of the public, even in the administration of commutative justice; and when they find an action is founded upon a claim injurious to the public, and which has a bad tendency, to give it no countenance or assistance in *foro civili.*" These words are quoted with approval by Judge Werner in *Veazey* v. *Allen* (173 N. Y. 359, 368).

The refusal of the courts to enforce contracts which are against public policy is not based upon any desire to relieve a party from the obligation which he has assumed, but rather upon the theory that such an agreement is injurious to the interests of society in general, and that the only way to stop the making of such contracts is to refuse to enforce them, and to leave the parties without a remedy for a breach thereof. (*Coverly* v. *Terminal Warehouse Co.*, 85 App. Div. 488; affd., 178 N. Y. 602.)

It is not necessary to plead the illegality of a contract which is contrary to public policy; the court will, of its own motion, step in and deny the right to any relief thereunder without reference to the state of the pleadings, whenever it becomes apparent that the agreement is antagonistic to the interests of the public. (*Drake* v. *Lauer*, 93 App. Div. 86, 88; affd., 182 N. Y. 533; *Drake* v. *Siebold,*

81 Hun, 178, 183; *Oscanyan* v. *Arms Co.*, 103 U. S. 261; *Roberts* v. *Criss*, 266 Fed. 296.)

While there is a difference between a contract to marry and an ordinary commercial agreement, yet one, in the eyes of the law, is as binding as the other. It is true that the interests of society demand that a person about to be married should be free to counsel and advise with his family and friends as to the character and habits of the one with whom he or she contemplates marriage, to the end that the union may be happy and successful. To permit those who are thus consulted to speak freely, the law has excepted the invasion of an agreement to marry from the general rule making one who wrongfully induces a party to violate his contract with a third party liable in damages to such person. (*Ryther* v. *Lefferts*, 232 App. Div. 552; *Stiffler* v. *Boehm*, 124 Misc. 55; *Guida* v. *Pontrelli*, 114 id. 181.)

The reason for this exception is based solely upon the benefit to society in permitting the parents and friends of contracting parties to speak freely concerning the wisdom and success of the contemplated marriage without fear of incurring liability, if such advice results in terminating the engagement. (*Ryther* v. *Lefferts*, 232 App. Div. 552; *Conway* v. *O'Brien*, 269 Mass. 425.)

It is one thing to give counsel and advice, but a far different matter to offer an attractive reward to induce a party to repudiate his promise to marry another. The law gives to one eligible to marry freedom of choice as to whom he will wed. Persuasion by a third person that such choice is unwise is proper, but the law will not countenance bribery, when arguments fail.

The agreement in suit was the inducing cause of plaintiff breaching her contract with her *fiancé*, something she had no right to do. Such a contract is contrary to public policy.

This brings us to the second reason urged by the appellant why the contract in suit cannot be enforced.

Marriage is the basis of civilized society and of sound morals, and is favored by the law. Any unreasonable restraint upon the custom is contrary to public policy.

In the case at bar the contract did not require the plaintiff to refrain from marrying whenever she saw fit. She could have wed any one, other than Church, whenever she desired, and not violate her agreement with the defendant. In fact, a strict construction of the contract would not prevent her from marrying Church, had he been willing, provided she first broke her existing engagement with him. The spirit of the agreement, however, would not have permitted such procedure. Had she done so, her good faith might well have been questioned. However, as plaintiff

was free to marry any one, unless it be Church, whenever she saw fit, we fail to see how the agreement can be said to be in restraint of marriage.

The contract being void because it called upon the respondent to do an illegal act, the law will leave the parties where it found them, and will not lend its aid to the plaintiff to enforce the agreement.

Defendant's motion should have been granted, and the complaint dismissed.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Order entered August 31, 1931, reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.