Elsie Brown, Appellant, v. Samuel Glickstein et al.,
Defendants below.
Sidney Glickstein, Morris Glickstein and Goldie Geyer,
Appellees.

Gen. No. 45,663.

Opinion filed July 3, 1952. Released for publication July 17, 1952.

IRVING G. ZAZOVE, of Chicago, for appellant.

MORRIS GOLDMAN, and ALLEN S. PIERCE, both of Chicago, for appellees.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff filed her complaint consisting of two counts against the defendants. The first count, which is not involved in this appeal, charges defendant Samuel Glickstein with breach of promise to marry the plaintiff. The second count charges defendants Sidney Glickstein, Morris Glickstein and Goldie Geyer, who are brothers and a sister of defendant Samuel Glick-

stein, with having maliciously induced defendant Samuel Glickstein to breach his agreement to marry, by making false, malicious and scandalous statements of and concerning the plaintiff to the said defendant Samuel Glickstein. From an order of the circuit court of Cook county dismissing the suit of the plaintiff as to the defendants Sidney and Morris Glickstein and Goldie Geyer, hereinafter referred to as defendants, and a judgment for costs, plaintiff appeals.

Plaintiff contends that the complaint states a good cause of action. She maintains (1) that any and all persons who maliciously cause a breach of promise to marry are liable in damages to the injured party, and (2) that even though procuring a breach of a marriage contract be regarded as an exception to the general rule of third-party liability, third parties are nevertheless liable for libelous or slanderous statements, and a cause of action in slander is set forth in the second count of this complaint.

Defendants contend (1) that third parties are not liable for causing a breach of promise to marry, even though maliciously inspired, and (2) that the complaint in the instant case is insufficient to support a cause of action in libel or slander.

While the law of this State is well established that third persons are liable for maliciously procuring a breach of contract, *Doremus v. Hennessy*, 176 Ill. 608, the question of whether or not malicious interference with a contract of marriage is an exception to the general rule has not heretofore been passed on by the courts of this State. There is, however, well reasoned authority in several foreign jurisdictions to support the proposition that in the absence of slanderous or libelous words, no cause of action will lie against a third person for causing a breach of contract to marry, even though instigated maliciously. The general state-

487

ment of the exception appears in Cooley on Torts (3d ed.), at page 494, in the following language:

"The prevention of a marriage by the interference of a third person, cannot, in general, in itself, be a legal wrong. Thus if one, by solicitations, or by the arts of ridicule or otherwise, shall induce one to break off an existing contract of marriage, no action will lie for it, however contemptible and blamable may be the conduct. But a loss of marriage may be such a special injury as will support an action of slander or libel, where the party was induced to break off the engagement by false and damaging charges not actionable *per se.*"

The rule thus pronounced seems to have been based upon the salutary premise that fullest freedom be permitted interested third parties to inform each of the parties to the marriage contract of the qualities, habits, peculiarities and reputation of the other before marriage in order that the permanency of the subsequent marital relationship might better be ensured. This principle of freedom to exchange information in this respect was regarded of such importance as to justify the risk of an occasional abuse by maliciously motivated individuals.

In *Homan v. Hall,* 102 Neb. 70, the court gave the following reason for adhering to the principle:

"The right of engaged parties to ask advice of their friends and the right of the friends to give advice has never been denied. To hold that a third party may be subject to answer in damages for advising or inducing an engaged person to break the engagement might result in a suit by every disappointed lover against his successful rival. The state has an interest in the marriage relation, and until the marriage is solemnized no domestic rights exist, and therefore cannot be violated."

488

In *Conway v. O'Brien*, 269 Mass. 425, the court said at page 428:

"Upon grounds of public policy we are of opinion that this action cannot be maintained. Although marriage is a civil contract, it is a relation between the parties which intimately concerns the welfare of society and the State, and the parents and other relatives and friends of the contracting parties ought to be free to advise them without incurring a liability to be called upon to respond in damages where such advice results in the breach of the contract to marry."

To the same effect are the cases of *Clarahan v. Cosper*, 160 Wash. 642; *Abelman v. Holman*, 190 Wis. 112; *Guida v. Pontrelli*, 114 Misc. 181, 186 N. Y. S. 147; *Stiffler v. Boehm*, 124 Misc. 55, 206 N. Y. S. 187; *Ryther v. Lefferts*, 232 App. Div. 552, 250 N. Y. S. 699; and *Leonard v. Whetstone*, 34 Ind. App. 383, 68 N. E. 197. In the *Ryther* case the court stated (p. 700):

"The question before us is whether or not the damage action for inducing a breach of contract is to be extended beyond the commercial phases to which it has been applied in the great majority of cases, and made to support a cause of action where the contract procured to be broken is an engagement of marriage. Such a contract should rest upon love and affection rather than upon mere commercial motives.

"Marriage is an institution upheld and favored by the state as creating a status upon which rests the structure of society. Parties before entering upon that status should not be hindered in securing information and advice from all sources so that they may become thoroughly informed of all facts and circumstances which might affect the desirability of their union."

Against this formidable array of authority plaintiff cites two cases in support of her first proposition: *Minsky v. Satenstein*, 6 N. J. Misc. 978, 143 Atl. 512,

and *Gunn v. Barr,* 1 Dominion Law Reports (1926) page 855. In the former case suit was brought by the male contracting party to a marriage against the parents of the female contracting party for inducing a breach of the contract of marriage. The court there held, in the following language, that the plaintiff had no cause of action against the parents:

"As already stated, the question here considered is one of novel impression in this state, and we are therefore free to adopt that ruling which is best fitted to promote social welfare and conserve the best interests of the home and family relationships, and that rule undoubtedly is that parents have the right to advise their child against entering into a contract to marry and even persuading the child to break such a contract, and their reasons for so doing cannot be inquired into, leaving them liable, however, to an action for libel or slander if such means are used to accomplish that end. It is apparent, however, that the rule should not be extended beyond parents or those standing in loco parentis to one of the parties."

In the above case there were two counts against the same defendants. In the first count the defendants were not designated as parents but in the second count they were so designated. The court, in line with the other authorities here cited, stated that the second count of the complaint should be stricken as not stating any cause of action against the parents. The first count, which did not name the defendants as parents, was allowed to stand. The complaint, taken as a whole, indicates that the defendants in this case were parents, and in view of that fact the authoritative pronouncement that the rule of privilege should not be extended beyond parents is considerably weakened. In any event, it is the single American case at variance with the numerous authorities above cited holding to the

contrary. The other case (*Gunn v. Barr, et al.,* 1 Dominion Law Reports, page 855), a Canadian case, was one of first impression and the court held that a contract of marriage should not be an exception to the general rule, citing the following legal principle from an early English case: " 'A violation of legal right committed knowingly is a cause of action, and that it is a violation of legal right to interfere with contractual relations recognised by law if there be no sufficient justification for the interference,' " and concluded by saying: "Though there appears to be no decided case where the principle has been applied to a contract to marry, there seems no good reason why it should not be."

It seems to us that the reasoning in the latter case begs the question. The question here raised is whether or not a legal right is violated by third parties causing a breach of a contract of marriage. The cases here relied upon are committed to the principle that no legal right is violated because no such rights exist in an agreement to marry. In any event the Canadian decision seems to be against the great weight of authority (73 A. L. R. 1450), and we do not feel justified in accepting it as authority.

■ We have carefully examined the complaint in this case and find no allegations which would support a cause of action based on libel or slander. The only allegation even remotely bearing upon such a charge is to the effect that the defendants "did make divers false, malicious and scandalous statements of and concerning the plaintiff herein to the said defendant Samuel Glickstein." Such allegation is a mere conclusion and does not set forth slanderous or libelous words with required particularity.

The order of the circuit court of Cook county dismissing the complaint as to the defendants Sidney Glickstein, Morris Glickstein and Goldie Geyer and the

491

judgment for costs entered against the plaintiff are affirmed.

*Affirmed.*

ROBSON, P. J. and SCHWARTZ, J., concur.