**WILLIAMS, Plaintiff,**

**v.**

**The CITY OF NEWBURGH, Newburgh Community Development Agency, and Barbara Jacobs, Defendants.**

No. 92 Civ. 2830 (LJF).

United States District Court, S.D. New York.

Aug. 27, 1993.

MEMORANDUM & OPINION

FREEH, District Judge.

In this action, plaintiff Billy G. Williams ("Williams") sought relief from defendants the City of Newburgh, the Newburgh Community Development Agency ("NCDA") (collectively, the "Newburgh Defendants") and Barbara Jacobs ("Jacobs") for their conduct in connection with his renovation of certain real property in Newburgh. Williams claimed that (1) the Newburgh Defendants breached an agreement with him to provide referrals of Section 8 tenants; (2) Jacobs deprived him of his constitutional right to procedural due process, in violation of 42 U.S.C. § 1983; (3) defendants tortiously interfered with Williams' lease agreements with the tenants in his building; and (4) Jacobs tortiously interfered with Williams' agreement with the Newburgh defendants.[1]

A jury trial on all issues was conducted on June 7, 1993 and June 14 to June 18, 1993. The jury returned a verdict in favor of Williams in the amount of $9600, finding that defendants had tortiously interfered with Williams' lease agreements with the tenants in his building. Defendants now move pursuant to Fed.R.Civ.P. 50(b) for judgment as a matter of law, claiming that the jury's verdict is against the weight of credible evidence. Williams cross-moves to set aside the verdict and presumably for a new trial on the grounds that no reasonable jury could have rejected his § 1983 claim and awarded such a small amount of damages. Fed.R.Civ.P. 59. For the reasons stated below, both motions are denied.

BACKGROUND

In late 1989, Williams, the owner of two properties in the City of Newburgh, became a participant in the City's Section 8 Rental Rehabilitation Program. That Program, which was sponsored by the United States Department of Housing and Urban Development, was implemented in Newburgh by defendant NCDA. Under the Program, landlords rehabilitating low-income housing were eligible for low-interest loans and other financial assistance.

By April 1990, Williams completed renovations at his building at 3 South Johnson Street (the "Building").[2] He rented one apartment in that building to Jacobs, although she was not eligible for Section 8 housing. Williams also rented a second

---

1. Williams' other claims against these and other defendants were dismissed either prior to or during trial.

2. Williams also owned a building at 241 Third Street in Newburgh. While Williams also lost that property to foreclosure, it was undisputed at trial that Williams never completed renovating that building.

apartment in the building to Jacobs' cousin, Rhonda Valentine ("Valentine").

After residing in the Building for several months, Jacobs began to fall behind in her rent. Because she did not remedy that situation, Williams had Jacobs evicted from the Building in October 1991. Subsequently, Valentine's lease ran out, and she too moved out of the Building.

Some time during or after her clash with Williams regarding her rental payments, Jacobs saw another of Williams' tenants, Mr. Melvin, driving a cab. Jacobs then reported to the NCDA that Melvin was earning additional income.

Once Jacobs had moved out of the Building, Williams received no other Section 8 tenant referrals from NCDA. He did not rent the vacant apartments to any other tenants, and became unable to make the payments on his bank loan. As a result, the bank foreclosed on the Building in March 1992.

## DISCUSSION

### 1. *Defendants' Motion*

■ A motion for judgment notwithstanding the verdict, now designated a motion for judgment as a matter of law, Fed.R.Civ.P. 50(b), as amended, must be denied "unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)). In determining such a motion, the trial court must grant the nonmoving party "every reasonable inference the jury might have drawn in its favor," and cannot "'substitute its judgment for that of the jury.'" *Id.* at 16 (quoting *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 168 (2d Cir.1980)). Rather, the court may only set aside the jury's verdict if

there is such a complete lack of evidence supporting that verdict that the jury's findings must have been "the result of sheer surmise and conjecture," or there is such "an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Mattivi*, 618 F.2d at 168.

Given this stringent standard, the Court finds, based on the evidence at trial, that a reasonable jury could find defendants tortiously interfered with Williams' relationship with his tenants. Defendants did not dispute that Jacobs, an employee of NCDA, was a tenant in Williams' building who eventually had to be evicted for failure to pay rent. Defendants also did not dispute that at the time of or subsequent to her conflict with Williams, Jacobs saw Melvin driving a cab and reported to the agency that Melvin was earning additional unreported income. Finally, defendants did not dispute that Melvin eventually had to break his lease with Williams because his rent subsidy had been reduced or eliminated. A reasonable jury assessing this series of events could, as it did, find that defendants tortiously interfered with Williams' contractual relationship with Melvin.[3] *PPX Enterprises, Inc. v. Audio Fidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir.1987) (in order to state a claim for tortious interference with prospective business relations, a plaintiff must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the relationship).

Defendants contend that they are entitled to judgment as a matter of law because (1) Jacobs had "a right and duty to report a crime;" and (2) Jacobs' communications with NCDA regarding Melvin's unreported income were privileged. (Defendants' Memo. at 3). To the extent that Jacobs reported Melvin to the NCDA, nothing in the record indicates that Melvin had committed any

---

**3.** At trial, Williams also seemed to argue that Jacobs interfered with his lease agreement with Valentine. However, Williams presented no evidence of such interference and the undisputed evidence showed that Valentine did not move out of the Building until her lease had expired.

crime.[4] Moreover, defendants have cited no authority demonstrating that Jacob's communications with NCDA were either absolutely or conditionally privileged.[5] Accordingly, the Court declines to set aside the jury's verdict cannot be set aside on that basis.

■ Defendants also argue that the Newburgh Defendants cannot be held liable for the actions of Jacobs, a relatively low-level employee. (Defendants' Memo. at 3–4). However, although they were on notice that the Court intended to charge the jury that all defendants were potentially liable on Williams' claim of tortious interference with his leases, defendants did not object to such a charge. Defendants also failed to request a charge limiting the Newburgh Defendants' liability. As a result, any objection to the Court's charge were waived. Fed.R.Civ.P. 51.

■ Finally, defendants contend that the jury was allowed to speculate as to the cause of the vacancies in Williams' building. (Defendants' Memo. at 4–5). With regard to the termination of Melvin's lease, that is not the case. As already noted, it was undisputed at trial that after Jacobs reported him to the NDCA, Melvin's rent subsidy was reduced or eliminated and that he subsequently terminated his lease with Williams. Under these circumstances, the jury was entitled infer, as it apparently did, that Jacobs was the cause of at least one vacancy in the Building.

2. *Plaintiff's Motion*

Williams also moves to set aside the verdict and for a new trial on the grounds that (1) the jury had insufficient information to render the verdict it did; (2) the racial balance of the jury led to an unfair result; (3) a number of witnesses lied; and (4) his attorney failed to introduce material evidence at trial. Fed.R.Civ.P. 59 provides that a new trial may be granted "to all or any of the parties and on all or part of the issues … in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." As a general rule, however, a new trial is only warranted "if [the trial court] 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 875 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)).

■ Contrary to Williams' claims, the Court does not find such a "seriously erroneous result" or "miscarriage of justice" here. Although it is apparent that, as in any case, Williams' counsel could have produced more evidence, in the Court's view the jury had more than sufficient information to reach the verdict they did. Whatever complaints Williams might have regarding his counsel's performance, a new trial is not the appropriate remedy for those complaints.

■ In addition, nothing in the record indicates that the jury which heard the case did not reflect "a fair cross section of the community." *Holland v. Illinois*, 493 U.S. 474, 479, 110 S.Ct. 803, 807, 107 L.Ed.2d 905 (1990) (citing *Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S.Ct. 692, 696, 42 L.Ed.2d 690 (1975)). Although Williams is now proceeding *pro se*, he is obligated to point to something—*i.e.* the manner in which the jury panel was assembled or the peremptory challenges were exercised—suggesting racial bias in the jury selection process. The mere

---

**4.** It must be noted that none of the cases relied upon by defendants support their claim that an individual has a right and duty to report a crime. For example, defendants cite *Messina v. Continental Purchasing*, 272 N.Y. 125, 5 N.E.2d 62 (Ct.App.1936), *Lee v. Silver*, 262 A.D. 149, 28 N.Y.S.2d 333 (1st Dept.1941), *aff'd*, 287 N.Y. 575, 38 N.E.2d 233 (1941), *Attridge v. Pembroke*, 235 A.D. 101, 256 N.Y.S. 257 (4th Dept.1932), and *Ryther v. Lefferts*, 232 A.D. 552, 250 N.Y.S. 699 (1st Dept.1931), cases which involve tortious interference claims, but no allegations of criminal activity. *See, e.g., Attridge*, 235 A.D. at 101,

256 N.Y.S. 257 and *Ryther*, 232 A.D. at 552, 250 N.Y.S. 699 (both addressing tortious interference with contract to marry).

**5.** Once again, the cases cited by defendants— *Campbell v. Gates*, 236 N.Y. 457, 141 N.E. 914 (Ct.App.1923), *Gianelli v. St. Vincent's Hospital*, 160 A.D.2d 227, 553 N.Y.S.2d 677 (1st Dept. 1990), and *Murtha v. Yonkers Child Care*, 45 N.Y.2d 913, 411 N.Y.S.2d 219, 383 N.E.2d 865 (Ct.App.1978)—are simply inapposite.

fact that Williams is black and only one black juror was selected does not, without more, support a finding of such bias or warrant a new trial.

■ Williams has also failed to present evidence that any witness lied or that the evidence presented was tainted in any way. While defendants' witnesses disagreed with Williams' version of events and interpretation of the parties' agreement, the existence of that disagreement does not necessarily mean that any witness perjured him or herself. Absent some other proof of the alleged lies, this argument also does not provide a basis for setting aside the jury's verdict.

For the foregoing reasons, defendants' motion for judgment as a matter of law and plaintiff's motion for a new trial are both denied.

SO ORDERED.