Arnold L. Fein, J.
 

 In this action by Patrick M. McG-rady, Jr., against his former wife, Elizabeth Rosenbaum McGrady, and her parents Dr. Milton Rosenbaum and Mrs. Jean Rosenbaum, to recover damages in the sum of $1,005,000, on 14 causes of action, pleaded in 136 paragraphs, the Rosenbaums move, under CPLR 3211, to dismiss the 12 causes of action pleaded against them for failure to state a cause of action, and for other relief.
 

 The first cause of action, against all three defendants, alleges plaintiff’s marriage to defendant Elizabeth on March 3, 1964, the birth of their son on September 3, 1965, the wife’s abandonment of plaintiff on December 15, 1965, to take up residence with her parents, her attempt to terminate the marriage by negotiation and agreement, refused by plaintiff, her trip with the child to Nevada in 1966, without plaintiff’s knowledge or consent, where she obtained a Nevada unilateral divorce against him, giving her custody of their son, her failure to advise him of her whereabouts or intentions and plaintiff’s nonappearance in the Nevada action. The Rosenbaums allegedly financed, induced and physically assisted the abandonment and divorce, including the payment of legal fees, transportation and living expenses and refused to tell plaintiff of the whereabouts of his wife and son and induced the wife to refuse visitation, which they said they would permit if plaintiff entered a -separation, divorce and custody agreement with his wife. It is further alleged that all three defendants conspired together to deprive plaintiff of knowledge of the whereabouts and condition of his child, in order to coerce him to enter into an agreement to terminate the marriage, settle property rights and provide for custody of the .son to defendants’ satisfaction. In habeas corpus proceedings instituted by plaintiff in the Westchester County Supreme Court in November, 1966, that court referred the determination of custody to the Family Court, but ordered that, until such determination, plaintiff should have weekly visitation rights with his son. Plaintiff alleges that such visitation worked out very well until May, 1968, when, with plaintiff’s permission, defendant wife and child, together with the wife’s parents, the Rosenbaums, went to Israel for a one-
 
 *184
 
 month visit. The wife and child returned to New York in June, 1968, and moved into her parents’ home in Larchmont. All costs and expenses of the trip were paid by the Rosenbaums.
 

 On July 3, 1968, without plaintiff’s knowledge or consent, defendant wife took their infant son with her to Israel for permanent residence, where they now reside with no intention of returning. Plaintiff alleges the Rosenbaums knew of their daughter’s intention to leave and to take up permanent residence with the child in Israel, and that they induced her to do so, and aided, abetted and advised her in so doing, by financing her trip and her residence there, including provision of an apartment in Jerusalem, and by physically assisting in her departure and conspiring with her to withhold such information from plaintiff until after her departure with the child, with the intention that this would remove the child from his father’s world, and would interfere with the father’s rights of possession, and the care and comfort of his child and with a meaningful relationship between them. This was done willfully, unlawfully, deliberately, wantonly and maliciously in violation of plaintiff’s rights and the visitation order of the Westchester County Supreme Court, and caused plaintiff great sorrow, pain and anguish, including worry as to the safety and welfare of the child in Israel, and the manner of his upbringing, all to plaintiff’s damage in the sum of $1,000,000, including $5,000 expended to determine his son’s whereabouts.
 

 The second cause of action, against all three defendants, incorporates the first cause of action, and alleges that these acts were ‘ ‘ malicious and willful ’ ’, as part of a “ wrongful conspiracy ’ ’ to deprive plaintiff of his rights, and that defendants endanger the safety of his son by keeping him in Israel.
 

 The third cause of action, against all three defendants, incorporates the first and then alleges that despite orders of the Family Court of Westchester County, directing that the wife return the child to Westchester County and appear and produce him before the court, and that the Rosenbaums appear and testify, none of the defendants, except Dr. Rosenbaum, appeared, that the child was not returned to Westchester County and was not produced before the court, and that temporary custody and visitation rights were awarded to plaintiff, and that all three defendants conspired together to prevent the child from being produced before the court and to defeat plaintiff’s temporary custody, visitation and other rights. This cause of action apparently attempts to plead wrongful obstruction of justice, to plaintiff’s damage.
 

 
 *185
 
 The fourth, fifth and sixth causes of action, against all three defendants, incorporate the bulk of the prior causes and allege that: (fourth) defendants willfully conspired maliciously to defeat, impair, prejudice and impede plaintiff’s rights and to obstruct justice; (fifth) defendants acted knowingly and deliberately with the malicious intention of injuring plaintiff; (sixth) defendants acted in concert, as part of a conspiracy, knowingly, intentionally, deliberately and maliciously to injure the plaintiff and to inflict harm on him, to his pain, sorrow, anguish and damage.
 

 The seventh cause of action, against all three defendants, incorporates the first and a portion of the second and further alleges that plaintiff was induced to enter into an agreement on December 23, 1966, reciting the Nevada decree of divorce, and consenting to the wife’s custody of the child, subject to plaintiff’s visitation rights, pursuant to a proviso that
 
 “
 
 the best interests of the child * * * will best be served by the continuing interest of, proximity to and contact of the child with his father ”. Plaintiff alleges he was induced to enter the agreement by representations by defendants that the wife and child would live in or near New York City, that plaintiff would be permitted regular, periodic visitation with and would be consulted as to the care, health, welfare and education of his son, that he would be advised of the child’s whereabouts and that the Rosenbaums would provide financial assistance to insure that their daughter and plaintiff’s son would live in New York City or nearby, and that such representations were false and fraudulent, in that defendants then intended and planned that plaintiff’s wife and child would remove to and permanently live in Israel. Defendants allegedly intended plaintiff to rely on such false representations and plaintiff did rely upon them in entering into the agreement, without knowledge of their falsity, or of defendants ’ plan and scheme, which they thereafter carried out, to remove his child to Israel for permanent residence, deliberately depriving plaintiff of his rights with respect to his son.
 

 The eighth and ninth causes of action against all three defendants incorporate the bulk of the prior causes and allege that: (eighth) defendants conspired together to commit these acts “ with malicious and willful intent, knowingly and deliberately and intentionally, wrongfully, fraudulently, and unlawfully” to deprive plaintiff of his rights with respect to his son; and (ninth) the agreement of December 23, 1966 provided for plaintiff’s visitation with his son, for communication and consulta
 
 *186
 
 tion respecting his son’s health, welfare and education, and that the defendants conspired to defeat these rights and to cause plaintiff’s wife to breach said agreement in these respects.
 

 The twelfth, thirteenth and fourteenth causes of action against the Rosenbaums, only, incorporate the bulk of the prior causes of action with respect to the December 23, 1966, agreement, and allege that: (twelfth) the Rosenbaums induced their daughter, to breach the December 23,1966, agreement by wrongful, malicious and fraudulent means, by financing her activities, by “ coddling, indulging and pampering ” her, by “ conniving ” with her ‘1 to spirit ’ ’ the child to Israel, thus willfully depriving plaintiff of his rights with respect to his son; (thirteenth) this constituted wrongful, malicious and unlawful interference with plaintiff’s rights under the agreement; and (fourteenth) it was part of a wrongful conspiracy maliciously to interfere with and induce the breach by plaintiff’s former wife of the provisions of the agreement relating to plaintiff’s rights of custody, visitation and control with respect to his son.
 

 Plaintiff seeks $1,000,000 damages against all defendants under the first, second, third, fourth, seventh, eighth and ninth causes of actions; $1,000,000 against the Rosenbaums, only, on the twelfth, thirteenth and fourteenth causes of. action, and $5,000 against all defendants on the fifth and sixth causes of action.
 

 It is clear that plaintiff has repeated, in a variety of forms, substantially the same facts in an endeavor to plead a cognizable cause of action, basically founded upon his allegations that his former wife abandoned him and procured a unilateral divorce against him, deprived him of custody, visitation and consultation rights with respect to their son, and removed their son without his permission for permanent residence in Israel, and in so doing violated plaintiff’s rights, breached the custody agreement, and violated court orders as to plaintiff’s custody, visitation and other parental rights, and that the Rosenbaums inspired, financed and induced, and physically and in other ways aided and abetted all of this activity, and willfully, maliciously and unlawfully conspired together with their daughter to accomplish these ends and to defeat his parental rights and intentionally to inflict harm and damage upon him.
 

 This appears to be a case of novel impression. The authorities relied on by the parties in their extensive briefs point no clear road.
 

 Undoubtedly, as plaintiff argues, a parent who has been wrongfully deprived of the company of his child, by inter
 
 *187
 
 ference with such custody, association and companionship, may recover damages from the wrongdoer for the mental anguish and wounded feelings and for the expenses incurred in vindicating the parent’s rights to have his child.
 
 (Pickle
 
 v.
 
 Page,
 
 252 N. Y. 474;
 
 McEntee
 
 v.
 
 New York Foundling Hosp.,
 
 21 Misc 2d 903.) However, these cases, heavily relied on by plaintiff, provide no foundation for liability as against a mother, who has lawful custody of the child or as against the mother’s parents, who have a right to assist her.
 

 In
 
 Pickle (supra)
 
 a grandfather, who had adopted his abandoned grandchild, was allowed to recover damages against a Sheriff who had abducted the child at the instance of the mother who had previously abandoned the child. The grandfather had the sole right to custody. The Sheriff was a stranger, acting under no color of right. The mother, who was not a party to the action, had no right to custody. The case was clearly an abduction action. Here, there was no abduction. Defendant mother had lawful custody, both by court order and by agreement, and it is she who withheld and withholds the child and removed him to Israel. Nowhere in the pleadings or supporting affidavits is it even alleged that the Rosenbaums themselves physically withheld or removed the child. At most for the plaintiff it could be found that they assisted the mother in the child’s removal. This was not an abduction, for which an action for damages would lie.
 

 In
 
 McEntee (supra),
 
 also relied on by plaintiff, a mother who had left her child ‘‘ temporarily ’ ’ with the Foundling Hospital sued the hospital and the foster parents with whom the hospital had placed the child, alleging defendants had ‘1 discouraged and prevented the plaintiff from visiting her said infant daughter ” and ‘1 restrained and prevented her daughter from seeing and visiting the plaintiff ” and “ from returning to and living with and in the plaintiff’s home in the natural and accepted relation of mother and daughter”. (21 Misc 2d 904.) The complaint was dismissed on motion, although the court suggested an action might lie against the foster parents on a complaint setting forth facts showing ‘
 
 ‘
 
 interference with the custody, association and companionship of the infant ”. It is noteworthy that the suggested cause of action was on behalf of the mother against foster parents, who had no legal custody, whereas here, the underlying actions are those of the mother who had possession and legal custody at the times involved. It is not without significance, in connection with the ‘ ‘ conspiracy ’ ’ causes of action here, that the complaint charging conspiracy against the hospital in
 
 McEntee
 
 was held insufficient
 
 for
 
 failure to allege any ‘4 tortious
 
 *188
 
 acts ”,
 
 “
 
 since the tort and not the conspiracy is actionable ” (21 Misc 2d 906).
 

 Miller
 
 v.
 
 Miller
 
 (254 App. Div. 586), also relied on by plaintiff, does not help him. There a wife’s complaint to recover damages against the father-in-law for malicious interference with the husband’s obligation to support his wife was allowed to stand. Obviously the recovery sought was the support to which plaintiff was entitled, far different from damages for interference with visitation. Moreover the case has not been followed. In
 
 Ruza
 
 v.
 
 Ruza
 
 (145 N. Y. S. 2d 274), cited by plaintiff, Special Term sustained a wife’s complaint against members of the husband’s family, drawn in reliance on
 
 Miller (supra).
 
 However, the Appellate Division reversed, holding that so much of the complaint, like that here, as told a11 running narrative ” of ‘£ a scheme, described as a conspiracy, to destroy the marital * * * status of plaintiff ’ ’ was barred by article 2-A of the Civil Practice Act [now Civil Rights Law, § 80-a] prohibiting actions for alienation of affections (286 App. Div. 767, 768). Moreover as that case also holds, characterizing such actions as a conspiracy or a prima facie tort, in the manner of the present complaint, does not make the complaint good.
 
 ‘ ‘
 
 There is no substantive tort of conspiracy ’ ’
 
 (Goldstein
 
 v.
 
 Siegel,
 
 19 A D 2d 489, 493).
 

 There is no cause of action for custody or to enforce or obtain visitation rights. Such relief is available only incidental to a matrimonial action, or by petition for such purpose, or by habeas corpus.
 
 (Finlay
 
 v.
 
 Finlay,
 
 240 N. Y. 429;
 
 Muller
 
 v.
 
 Ashhurst,
 
 208 Misc. 283.) It is immaterial that the right sought to be enforced is alleged to be founded upon a separation or custody agreement. ££ The breach of the alleged agreement and the continued refusal of defendant to abide by the terms thereof furnish no ground for action.”
 
 (Muller
 
 v.
 
 Ashhurst, supra, p. 286.)
 
 Although this was written in the context of a declaratory judgment and injunction action, the discussion there compels the conclusion that an action for damages does not lie.
 

 The remedy against a spouse who violates a court order respecting custody or visitation by removing the child from the State is by way of contempt or by precluding her standing to challenge the order or to enforce its support provisions, not by an action for damages.
 
 (Matter of Dillon,
 
 278 App. Div. 735;
 
 Strnad
 
 v.
 
 Strnad,
 
 194 Misc. 743.) Custody may be awarded to the father in an appropriate action, in such cases.
 
 (Matter of Whittemore
 
 v.
 
 Whittemore,
 
 202 Misc. 175;
 
 Matter of Denberg
 
 v.
 
 Denberg,
 
 34 Misc 2d 980.) But this does not authorize damages.
 

 
 *189
 

 Sheets
 
 v.
 
 Sheets
 
 (22 A D 2d 176) and
 
 Schneider
 
 v.
 
 Schneider
 
 (17 N Y 2d 123), relied on by plaintiff, are not to the contrary. Although they hold arbitration is proper as to custody and visitation rights under a properly drawn arbitration clause in a separation agreement,
 
 Sheets (supra)
 
 clearly excludes damages as an element of arbitrable relief, except to the extent that the husband’s obligation to support might be reduced for denial of visitation, a remedy sometimes applied in divorce and separation actions.
 

 In the face of the policy considerations underlying this doctrine it would be anomalous to allow a damage action against the wife’s parents who gave assistance to the wife.
 

 Significant in this connection is the language of the Court of Appeals in
 
 Servis
 
 v.
 
 Servis
 
 (172 N. Y. 438), an alienation of affections action brought before such actions were abolished (172 N. Y., at pp. 442-443): “Of the absolute right of a father to furnish money for the support of a son who has, for reasons good or bad, determined to abandon his wife, there is of course no doubt — a right that he may exercise without being subjected to respond in damages to the deserted wife provided its exercise be not part of a general scheme having for its object the alienation of the husband’s affection for his wife and her abandonment by him. ’ ’
 

 The bar against alienation of affections actions precludes an action for alienation of affections of a child.
 
 (Katz
 
 v.
 
 Katz,
 
 197 Misc. 412; see
 
 Wasserman
 
 v.
 
 Weisner,
 
 36 Misc 2d 916;
 
 Miles
 
 v.
 
 Cuthbert,
 
 122 N. Y. S. 703; see
 
 McEntee
 
 v.
 
 New York Foundling Hosp., supra.)
 
 As was said in
 
 Ruza (supra,
 
 p. 770): “ The fact is that the complaint in this case, by lumping a congeries of acts * * *, has failed to spell out the elements of any single cause of action * * *. Inextricably wound into the allegations is a banned cause of action for alienation of affections ”.
 

 In that case the court was able to discern allegations as to actionable torts. Leave was accordingly granted to replead. There is no basis for such relief here.
 

 Plaintiff’s reliance on
 
 Carlinger
 
 v.
 
 Carlinger
 
 (21 A D 2d 656) to support the causes of action arising out of the alleged fraudulent inducement to enter the custody agreement, is misplaced. A wife’s complaint was held good in an action for damages and for rescission of a separation agreement because of fraudulent representations as to the husband’s income. (See
 
 Weintraub
 
 v.
 
 Weintraub,
 
 302 N. Y. 104.) The issue was the wife’s entitlement to support, not a question of custody or visitation, where the concern of the court is the interests of the
 
 *190
 
 child, not the vindication of the rights of one parent against the other by the sanction of damages. An award of damages here would aid the child not at all. Even if intended as a device in the custody and visitation controversy, it is without sanction.
 

 The causes of action pleaded against the Rosenbaums, only, for inducement to breach the custody agreement stand on no better footing. The privilege of a parent has already been noted.
 
 (Servis
 
 v.
 
 Servis,
 
 supra;
 
 Hutcheson
 
 v. Peck, 5 Johns. 196;
 
 Bennett
 
 v.
 
 Smith,
 
 21 Barb. 439; see
 
 Attridge
 
 v.
 
 Pembroke,
 
 235 App. Div. 101;
 
 Ryther
 
 v.
 
 Lefferts,
 
 232 App. Div. 552; Civil Rights Law, § 80-a.) Even assuming some measure of malice attended the Rosenbaums’ advice and assistance to their daughter, an action does not lie against one whose motives may be mixed, but who has a legitimate purpose or who pursues a protected objective.
 
 (Beardsley
 
 v.
 
 Kilmer,
 
 236 N. Y. 80;
 
 Winderbaum
 
 v.
 
 Winderbaum,
 
 39 Misc 2d 478, affd. 20 A D 2d 626.)
 

 The complaint in its many causes fails to state a cause of action against the Rosenbaums. It is basically an action for alienation of affections barred by the statute. Even if it be deemed an action for intentional infliction of harm, no cognizable cause of action is stated.
 

 As stated in
 
 Weicker
 
 v.
 
 Weicker
 
 (22 N Y 2d 8) at page 11:
 
 “
 
 Assuming that New York law now permits ‘ recovery for the intentional infliction of mental distress without proof of the breach of any duty other than the duty to refrain from inflicting it ’
 
 (Halio
 
 v.
 
 Lurie,
 
 15 A D 2d 62, 66; see, also,
 
 Battalla
 
 v.
 
 State of New York,
 
 10 N Y 2d 237;
 
 Ferrara
 
 v.
 
 Galluchio,
 
 5 N Y 2d 16, 21), strong policy considerations militate against judicially applying these recent developments in this area of the law to the factual context of a dispute arising out of matrimonial differences. To sustain the claim for damages would result in a revival of evils not unlike those which prompted the Legislature in 1935 to outlaw actions for alienation of affections and criminal conversation (L. 1935, ch. 263; Civil Rights Law, § 80-a, formerly Civ. Prac. Act, § 61-b).”
 

 As this holding suggests, an action for damages or a damage verdict would probably he the least useful technique for the resolution of matrimonial differences or custody disputes.
 

 Accordingly, the motion is granted and the 12 causes of action (the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, twelfth, thirteenth and fondeenth) pleaded against the Rosenbaums are dismissed as to them. In view of this disposition, the alternative relief requested by the moving defendants has not been considered.