[Civ. No. 12259. Third Dist. Mar. 10, 1971.]

SUZANNE MARTHE GIBSON, Plaintiff and Respondent, v.
THELMA V. GIBSON, Defendant and Appellant.

944

**COUNSEL**

Belli, Ashe, Ellison, Choulos & Lieff and Robert L. Lieff for Defendant and Appellant.

Perkins, Carr & Anderson and Frances Carr for Plaintiff and Respondent.

**OPINION**

**REGAN, J.**—This is an appeal from a judgment in favor of plaintiff for damages[1] against the paternal grandmother of plaintiff's children for the grandmother's participation in the abduction and continued secretion of such children from the custody of plaintiff. Defendant appeals from the judgment.

---

[1]The jury found the plaintiff's damages to be $50,000. The jury also assessed punitive damages aginst defendant in the amount of $40,000.

Defendant is the former mother-in-law of plaintiff, who married defendant's son and only child, Melville, in 1955 in France. Plaintiff's son by a prior marriage, Roberto, was adopted by Melville at the time of the marriage and a daughter, Sandra, was later born of their union in Sacramento, where plaintiff had come with her husband in 1956.

After a period of time the marriage began to deteriorate and plaintiff filed suit for divorce and was awarded custody of the children. Subsequently, the custody order was modified to allow Melville to have the children two days per week.

Thereafter, plaintiff agreed that Melville could pick up the children after school on Friday, January 31, 1964, and return them Saturday evening, February 1, 1964. The children were never returned. Plaintiff's phone calls to defendant elicited only evasive replies. Plaintiff has not seen her children since she took them to school that Friday morning. There was substantial evidence that defendant, through her actions and financial support, connived with her son to deprive plaintiff of the lawful custody of her two children by aiding her son to take them to Mexico.

█ Plaintiff's complaint sought general and compensatory damages alleging defendant aided and abetted and conspired with her son in depriving plaintiff of her right to the custody of her children. Defendant denied the allegations and as a special defense alleged that pursuant to an order to show cause in re contempt defendant appeared before the superior court and "a full and complete hearing was held on the merits of the issue as to whether said THELMA V. GIBSON had aided, abetted and assisted MELVILLE EUGENE GIBSON in depriving plaintiff of her right to the custody of said children. That at said time said issue was fully and completely litigated on its merits. That following said hearing, the Honorable Joseph Babich dismissed said contempt citation; that by reason of the foregoing premises, plaintiff is estopped from further litigating the issue . . . ."[2] The demurrer to the special defense was sustained.

In the trial of the action for damages the transcript of the contempt proceedings was not admitted in evidence, nor is the file in the contempt proceedings before this court.

Defendant contends the court erred in failing to estop plaintiff from relitigating issues in the instant action which had previously been determined in a prior adjudication.

Although defendant talks in terms of res adjudicata, she apparently is relying on the doctrine of collateral estoppel since she cites *Teitelbaum*

---

[2]Following this hearing the contempt citation was dismissed.

*Furs, Inc.* v. *Dominion Ins. Co. Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439], and employs the test the court sets forth at page 604. The court there states: "The doctrine of res judicata has a double aspect: (1) it 'precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction.' (2) 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.' (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 810 [122 P.2d 892]; see *Taylor* v. *Hawkinson,* 47 Cal.2d 893, 895-896 [306 P.2d 797].) In the present case, since plaintiff's cause of action is different from that of the state in the criminal proceeding, we are concerned with the latter aspect, often termed collateral estoppel.

"In the *Bernhard* case, *supra,* this court rejected the doctrine for mutuality of estoppel that had been applied to limit the scope of collateral estoppel, and held three questions to be pertinent in determining the validity of the plea. 'Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?' (19 Cal.2d at p. 813.)"[3]

The court then found that the record in *Teitelbaum* provided affirmative answers to these three questions and held that a prior felony conviction, after a full and complete trial, collaterally estopped the defendant from relitigating the same issues in a later action for civil damages. (58 Cal.2d at pp. 606-607.)[4]

Defendant, of course, argues that the three questions posed in *Teitelbaum* must be answered affirmatively in the instant case. In other words, she contends the issues are identical, there was a final judgment on the merits (see Code Civ. Proc., § 1222), and the party against whom the plea is asserted was a party to the prior adjudication. Defendant cites no authority for the proposition that an *acquittal* has been held to be within the doctrine of collateral estoppel.

Assuming, but not conceding, that defendant's contentions are correct, we are still faced with an anomalous situation, for defendant was acquitted of contempt. In *Teitelbaum* the court stated (at pp. 604-605) that "[t]he cases do not preclude the application of collateral estoppel in a civil case to issues determined in a previous criminal prosecution." However, the precise question of the application of collateral estoppel after an acquittal

---

[3]In general, see 3 Witkin, California Procedure (1954) Judgment, section 44, pages 1926-1927.

[4]See Note, 18 A.L.R.2d 1287; Witkin, California Evidence (2d ed. 1966) The Hearsay Rule, sections 604-605, pages 573-574.

in a criminal prosecution in subsequent civil litigation was not in issue. (Cf., *Stevenson* v. *Link* (1954) 128 Cal.App.2d 564, 571-575 [275 P.2d 782].) Nevertheless, the court in *Teitelbaum* distinguished, and apparently cited with approval, a decision of this court involving a prior acquittal (*In re Anderson* (1951) 107 Cal.App.2d 670 [237 P.2d 720]), stating (at p. 605): *"In re Anderson, supra,* rejected the plea as applied to a former acquittal on the ground that ' "the difference in degree in the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata. The acquittal was merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." ' (107 CalApp.2d 670, 672; see *Helvering* v. *Mitchell,* 303 U.S. 391, 397 [82 L.Ed. 917, 920, 58 S.Ct. 630]; Annot. 18 A.L.R.2d 1287, 1315.)"

This court in *Anderson* relied on the *Helvering* case (also cited by the Supreme Court above), and commented as follows (at p. 672): "In *Helvering* v. *Mitchell,* 303 U.S. 391, 397 [82 L.Ed. 917, 920, 58 S.Ct. 630], in holding that an acquittal in criminal proceedings was no evidence of non-guilt in civil actions arising out of the same facts the court said: 'The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata. The acquittal was "merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." *Lewis* v. *Frick,* 233 U.S. 291, 302 [58 L.Ed. 967, 973, 34 S.Ct. 488]. It did not determine that Mitchell had not wilfully attempted to evade the tax. That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled.' "[5]

To the same effect is the New York case of *Etheridge* v. *City of New York* (Sup. 1953) 121 N.Y.S.2d 103, 104: "An examination of the cases discloses that, although in certain instances, proof of a conviction in a criminal case is admissible in a subsequent civil action involving the same subject matter or circumstances, Schindler v. Royal Ins. Co., 258 N.Y. 310, 179 N.E. 711, 80 A.L.R. 1142; Matter of Rechtschaffen's Estate, 278 N.Y. 336, 16 N.E.2d 357, no case in this state has extended that rule to permit introduction of a judgment of acquittal on a criminal charge in favor of the accused. See Walther v. News Syndicate Co., 276 App.Div. 169, at page 174, 93 N.Y.S.2d 537, at page 542. Decisions in other states seem to be in full agreement that a judgment of acquittal in a criminal case is not competent evidence in a subsequent civil action to prove the innocence

[5] In *Helvering,* a taxpayer was acquitted on the charge of wilfully attempting to evade a federal income tax. Internal Revenue then assessed an income tax deficiency against him.

of the accused. For cases similar to the instant one, see Young v. Davis, 174 Miss. 435, 164 So. 586 and Hampton v. Westover, 137 Neb. 695, 291 N.W. 93. See also Note in 18 A.L.R.2d 1287-1319

"There are substantial reasons for different treatment of judments of conviction and acquittal. For example, the quantum of proof required in a criminal case, i.e., proof beyond a reasonable doubt, may result in an acquittal upon evidence which falls short of that requirement while it would be sufficient in a civil case. All a judgment of acquittal may signify is the negative result that proof for a conviction did not exist. Therefore, the considerations which prompt admission of a judgment of guilt do not apply to a judgment of acquittal."[6]

In its opening brief, defendant characterizes contempt as quasi-criminal in nature. In her closing brief she seems to suggest, among other things, that the contempt proceedings here could be characterized as civil in nature.

We think the alleged contempt in this case must be treated as quasi-criminal in nature (*Foust* v. *Foust* (1956) 47 Cal.2d 121, 124 [302 P.2d 11]; *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146, 148-149 [314 P.2d 164]; *Nieri* v. *Nieri* (1954) 124 Cal.App.2d 292, 295 [268 P.2d 547]), and it was so treated by the parties throughout the proceedings. ■ "[A] contempt proceeding is not a civil action but is of a criminal nature even though its purpose is to impose punishment for violation of an order made in a civil action. . . ." (*Bailey* v. *Superior Court* (1956) 142 Cal.App.2d 47, 53 [297 P.2d 795].) ■ A mere preponderance of evidence is insufficient to sustain a charge of contempt. (*Uhler* v. *Superior Court* (1953) 117 Cal.App.2d 147, 151 [255 P.2d 29, 256 P.2d 90].) An accused on trial for contempt must be proved guilty beyond a reasonable doubt. (*Oil Workers Intl. Union* v. *Superior Court* (1951) 103 Cal.App.2d 512, 527 [230 P.2d 71].)

■ Based upon the foregoing authorities, we think the better rule to be that a prior acquittal in a criminal or quasi-criminal proceeding, such as the contempt citation herein, does not collaterally estop subsequent civil litigation on the same issues. Thus, defendant's contention must fail.

We find it unnceessary to characterize contempt as being either a felony

---

[6]The reference to the note in 18 A.L.R.2d at page 1315 states the same general rule and reasons therefore: "There are stronger arguments for applying a different rule where, in a civil action, proof of a prior acquittal is offered as proof of the facts upon which it is based, than in the cases where evidence of a prior conviction is tendered, since a judgment of conviction is a positive finding, indicating that the state has successfully borne the extraordinary burden of proving the relevant facts beyond a reasonable doubt, whereas the acquittal does not purport to be a judgment of innocence, but is merely a negative statement that the proof necessary for a conviction was not forthcoming."

or a misdemeanor, and thus decline to rule on plaintiff's contention in this regard since it is unnecessary to our decision.

Defendant's final argument is that she was denied the effective assistance of counsel guaranteed to her by the Sixth Amendment of the United States Constitution as incorporated in the Fourteenth Amendment to the Constitution, and by the analogous provisions of the Constitution of the State of California. Defendant argues this case is criminal in nature since punitive damages were awarded.

We reject the contention, however, that the due process principles regarding incompetent counsel in criminal proceedings should be transported into civil proceedings, even though involving punitive damages.[7] (See *Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal.App.2d 689, 716-717 [60 Cal.Rptr. 398, 29 A.L.R.3d 988] (hg. den.).)

". . . The constitutional guarantees which appellant says it was denied are applicable in criminal cases but are not controlling in purely civil actions such as the case before us. It follows that the award of penal damages made under civil rules of procedure did not violate any constitutional right of appellant." (*Id.* at p. 717.)[8]

The judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.

---

[7] A civil litigant who feels aggrieved by his counsel's "inadequacy" has proper resort to the civil courts.

[8] See also *Hullom* v. *Burrows* (6th Cir. 1959) 266 F.2d 547 [Sixth Amendment which provides that in criminal prosecutions accused shall have assistance of counsel for defense, not applicable to civil cases].