Mabio J. Cabiello, J.
Defendant Ohel Children’s Home (hereinafter “ the Home ”) moves to dismiss “ the causes of action alleged on behalf of plaintiff, Carmela Lisker * * * on the grounds that the complaint on her behalf fails to state a cause of action and is barred by the Statute of Limitations.”
The first cause of action is brought on behalf of Carmela Lisker who alleges that she is the mother and natural guardian *86 of the infant plaintiff .Ralph Leonard Lisker and that on February 6,1971 she was requested by an employee of the New York City Bureau of Child Welfare to consent to the placement of the infant plaintiff in ,a foster home. She further alleges that during the month of February, 1971 she appeared at a hearing in the Family Court, Queens County, and was again requested by the employee of the Bureau of Child Welfare to consent to the placement of the infant plaintiff in ,a foster home and that she again refused to consent. Plaintiff alleges- that thereafter on February 21, 1971, although no court order was . issued, her husband, the natural father of the infant plaintiff, Henry Lisker, “ took possession of infant plaintiff * * * and removed said infant from premises of plaintiff ’ ’.
Plaintiff further alleges that on or about February 21, 1971 the Home accepted possession of the infant plaintiff from the defendant Henry Lisker and, on information and belief, the Home was instructed by the City of New York, Bureau of Child Welfare, to place the infant plaintiff under foster care. Plaintiff alleges that thereafter the infant plaintiff was transferred to “ John Doe” and “Mary Doe ” who maintained possession of the infant until May 25,1971. Plaintiff states that the placement was done without her consent and without an order of the Family Court and that custody of the infant was not placed with the Commissioner of Social Services prior to the placing of the infant plaintiff in the Home. Furthermore, plaintiff alleges that she demanded the return of the infant plaintiff from the Home and was refused. She concludes that the ‘ aforesaid kidnapping, detention and false imprisonment of infant plaintiff * * * was made by the defendants individually and in concert with one another without any justification or excuse and without any warrant or other legal process directing or authorizing the detention and imprisonment of infant plaintiff ”. She concludes that, as a result, she has suffered extreme mental stress and anguish which has affected her mental and physical health ■and, as a result, she seeks damages in the sum of $25,000.
The fundamental question presented on this motion to dismiss is, assuming, as one must, that the allegations contained in the first cause of action are true (Kober v. Kober, 16 N Y 2d 191, 193-194), may Carmela Lisker recover for her mental and physical injuries incurred as a result of the detention of her infant by the Home.
In support of her argument that she should be recompensed for physical and mental injuries caused by the trauma she suffered because of the alleged kidnapping of her son, plaintiff *87 relies on the decision of the Court of Appeals in Pickle v. Page (252 N. Y. 474). In that case the court held that, in an action for the abduction of a child, it was proper for the jury to consider the wounded feelings of the foster father and to impose punitive damages upon those who abducted the child. In Pickle v. Page (supra), plaintiffs were -the grandfather and grandmother of an infant and had legally adopted the child upan his abandonment by the mother, “ several years later, the mother, enlisting the services of the defendant, a county Sheriff, caused the child to be abducted from the possesion of his foster parents. The defendant, employing violence and exhibiting a reckless defiance of the rights of the lawful custodians, actively aided in procuring the abduction ” (p. 475). The Court of Appeals held that, in actions predicated on the abduction of infants from the custody of their lawful custodians, no loss of services had to be alleged or proven; ‘ ‘ that for the direct injury done, a direct recovery may be had without resort to the fiction that a loss of service has been occasioned. It would be a reproach to our legal system if, for the abduction of a child in arms, no remedy ran to its parent, although ‘ for a parrot, a popinjay, a thrush ’ and even ‘ for a dog ’ an ample remedy is furnished to their custodian for the loss of their possession.” (p. 482).
Thus, if plaintiff had pleaded the elements of a true abduction, there would be no bar to her recovery for the mental anguish incident to the taking of the child. However, the activities ascribed to the Home, i.e., accepting custody of the child without lawful authority and maintaining custody of the child after being notified by the natural mother of her objection to such custody, do not constitute abduction or kidnapping as defined in Pickle v. Page (supra). (See, generally, Penal Law, art. 135.) Moreover, in Roher v. State of New York (279 App. Div. 1116), the Appellate Division of the Third Department affirmed the decision of the Court of Claims denying recovery far mental anguish suffered by two fathers and by an aunt where the respective sons and nephew were falsely imprisoned. (See, also, Kalina v. General Hosp. of City of Syracuse, 31 Misc 2d 18.) Accordingly, it appears that the cause of action recognized in Pickle v. Page (supra) has generally been limited to abduction eases and that courts have been reluctant to extend the rule to other cases involving less serious detentions of children.
The reasons why courts have generally been reluctant to allow recovery for mental anguish sustained by a parent-bystander were set forth in the decision of the Court of Appeals in Tobvn v. *88 Grossman (24 N Y 2d 609) which involved a mother’s claim for mental suffering which arose from the negligent injury to her child. The court held (p. 611) that no cause of'action lies “ for unintended, harm sustained by one, solely as a result of injuries inflicted directly upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries. ’ ’ (Emphasis supplied).
In Tobin v. Grossman (supra), the mother of a two-year-old child who suffered serious injuries in an automobile accident sought to recover for her mental distress suffered when she heard the screech of automobile brakes and immediately went to the scene of the accident a few feet away and saw her injured child lying on the ground. The Court of Appeals stated that “ assuming that there are cogent reasons for extending liability in favor of victims of shock resulting from injury to others, there' appears to be no rational way to limit the scope of liability.” (p. 619). It concluded its opinion with the following statement (pp. 619-620): “ Beyond practical difficulties there is a limit to attaining essential justice in this area. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the rippling of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. The risk of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed ”.
However, this rationale is not compelling when applied to the case at bar. Plaintiff has alleged a set of facts indicating a wrongful interference with custodial relations and the resultant serious mental injury to the mother of the wrongfully detained child. Permitting the mother to sue for her injuries will not open the floodgates of litigation. To quote a leading treatise (Harper & James, Law of Torts, § 8.6, p. 627): “ The frank recognition of the parent’s interest as a parent seems highly desirable and should be protected, at least, against intended invasions of that interest * * * It is not subject to the pbjection of innumerable actions based upon mental distress. It is only the parent oj* one in his position who can bring the action and the harm recognized is not only the emotional suffering, as such, but the injury to the parental relation,”
*89 It would appear that if the parental interest is to be protected in instances of abduction of the child, that same interest is sufficient to merit protection in instances such as the serious intérference with custodial relations alleged in the case at bar. Some lower court decisions have recognized that the rule of Pickle v. Page (supra) should be applied to instances in which the offending conduct, while not constituting an abduction, did significantly interfere with the parent’s custody of the child. Thus, in McEntee v. New York Foundling Hosp. (21 Misc 2d 903, 904), the court stated: “ It is apparent, however, that the complaint purports to allege, though insufficiently, not simply alienation of affections of the child but also an interference with the custody, association and companionship of the infant. Such facts, if properly set forth, would be actionable.” (See, also, Prosser, Torts [2d ed.], pp. 692-693 and 11 Encyclopedia of N. Y. Law [Damages, § 1221].)
Similarly, in McGrady v. Rosenbaum (62 Misc 2d 182, 186, affd. 37 A D 2d 917), the court stated: “ undoubtedly * * * a parent who has been wrongfully deprived of the company of his child, by interference with such custody, association and companionship, may recover damages from the wrongdoer for the mental anguish and wounded feelings and for the expenses incurred in vindicating the parent’s right to have his child.” (See, also, Markowitz v. Fein, 30 A D 2d 515.)
Accordingly, this court holds that the alleged conduct ascribed to the Home, which involved keeping plaintiff’s child without lawful justification and the delivery of the child to foster parents after the Home had been notified by the mother of her right to custody of the child, is of such a nature that it comes within the spirit of the rules set forth in Pickle v. Page (supra). If the facts alleged are proven on trial, the mother may recover for her mental and physical distress and the first cause of action is therefore held to be sufficient.
The motion to dismiss on the ground that the cause of action of Carmela Lisker is barred by the Statute of Limitations is also denied. Movants contend that the Statute of Limitations, which is applicable to the infant’s cause of action, is the one-year statute which governs false imprisonment and that, therefore, this period of limitation is also applicable to the mother’s cause of action. This contention is without merit. The parent’s cause of action is independent of the child’s. Even assuming that the child’s cause of action would be time-barred by the false imprisonment period of limitation, the parent’s cause of action is predicated on interference with custodial, relations and would not be affected. (See Orr v. Orr, 36 N. J. 236; CPLR 214.)