**Judy Rae WOOD, Appellant,**

v.

**Kenneth WOOD, Appellee.**

No. 68316.

Supreme Court of Iowa.

Sept. 21, 1983.

Timothy W. Shuminsky, of Shuminsky, Shuminsky & Molstad, Sioux City, for appellant.

LARSON, Justice.

The substantive issue here is whether a claim for damages may be asserted against a parent who has refused to return the parties' child within the time provided in the dissolution decree. A motion to dismiss the petition was sustained by the district court. We reverse and remand.

The plaintiff's petition alleged that, "from December 25, 1981, to January 29, 1982, the defendant kidnapped the minor child of plaintiff from her care, custody and control" and that such act was "negligent, willful, malicious and in utter disregard for the rights of the plaintiff." She demanded actual and punitive damages.

The defendant responded by filing a motion to dismiss, alleging:

> 1. That there is no cause of action as alleged by the plaintiff as to warrant her receiving money damages from the defendant so that this matter should be dismissed.
>
> 2. That there are no statutory nor common law grounds which form the basis of this action.
>
> WHEREFORE, defendant prays that plaintiff's petition be dismissed at her cost.

The district court sustained the motion to dismiss in a calendar entry which simply said: "Defendant's Motion to Dismiss is sustained. Copies to counsel."

I. *The Procedural Issue.*

The plaintiff complains that the district court's ruling sustaining the motion to dismiss did not comply with Iowa Rule of Civil Procedure 11 because it did not rule separately on each ground of the motion. Rule 118 provides:

> *Specific rulings required.* A motion, or other matter involving separate grounds

or parts, shall be disposed of by separate ruling on each and not sustained generally.

This court has said that the purpose of this rule is to enable the parties to know which grounds are sustained by the court and to narrow the issues on appeal, thereby saving time and expense. *Brown v. Ellison,* 304 N.W.2d 197, 200 (Iowa 1981); *Oak Leaf Country Club, Inc. v. Wilson,* 257 N.W.2d 739, 743 (Iowa 1977). We have held that failure of a court to abide by rule 118 ordinarily is reversible error. *Brekken v. County Board of Review,* 223 N.W.2d 246, 247 (Iowa 1974); *Ruby v. Easton,* 207 N.W.2d 10, 14–15 (Iowa 1973).

■ In this case, however, failure of the court to separately rule on each paragraph of the motion did not amount to a failure to rule on "separate grounds" as required by rule 118. While the motion to dismiss was in separate paragraphs, it raised only one issue: Does Iowa recognize this claim for damages?

## II. *The Claim for Abduction.*

■ In an early case, this court discussed the right of a parent to recover damages for deprivation of custody of a child:

That the father has a right to the care and custody of his minor children, and to superintend their education and nurture, is a proposition that does not admit of controversy. And where he is deprived of such care and custody, and of this superintendence, by the act of another, he has his remedy, by proper action, against such person, is equally clear. As it is the duty of the father to educate, protect, and nurture his children, so it is his right to have their society, their services, and the control of their moral and intellectual training.

*Everett v. Sherfey,* 1 Iowa 356, 359 (1855).

In its early stages, a claim for wrongfully seizing or retaining custody of a child was restrictively applied; only a father could pursue the claim, and it was based on a deprivation of the child's services. *Id.* at 360–61; *see also Pyle v. Waechter,* 202 Iowa 695, 697, 210 N.W. 926, 927 (1926); W. Pros-

ser, *Handbook of the Law of Torts* § 124, at 882–83 (4th ed. 1971). The rule permitting recovery has since been expanded; most courts requiring a loss of services as a prerequisite have been willing to find a constructive loss of services, even though none are being rendered. Other courts disregard earlier restrictions and merely adopt what is characterized as the "modern" view. Under this approach, the essence of the claim is the interference with the parental relationship, not a loss of services. *Id.* at 883.

As long ago as 1938, the *Restatement of Torts* recognized an action for tortious interference with custody. *See Restatement of Torts* § 700 (1938). The current section states the principle:

§ 700 *Causing Minor Child to Leave or not to Return Home.* One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.

*Restatement (Second) of Torts* (1977). The *Restatement* rule permits suits by parents against noncustodial parents, as well as against nonrelatives:

c. *When both parents entitled to custody and earnings.* When the parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other. When by law only one parent is entitled to the custody and earnings of the child, only that parent can maintain an action under the rule stated in this Section. *One parent may be liable to the other parent for the abduction of his own child if by judicial decree the sole custody of the child has been awarded to the other parent.*

*Restatement, supra,* § 700, comment c. (Emphasis added.)

The claim for interference with custody rights appears to have been recognized in every jurisdiction which has addressed the

issue. *See, e.g., Rosefield v. Rosefield,* 221 Cal.App.2d 431, 435–37, 34 Cal.Rptr. 479, 483 (1963); *Bennett v. Bennett,* 682 F.2d 1039, 1044 (D.C.Cir.1982); *Spencer v. Terebelo,* 373 So.2d 200, 202 (La.App.1979) (cause of action based on violation of kidnapping statute; breach of legal duty); *Wasserman v. Wasserman,* 671 F.2d 832, 834–35 (4th Cir.1982) (applying Maryland law) (complaint alleging "child enticement" is a generally recognized common law tort); *Kipper v. Vokolek,* 546 S.W.2d 521, 525 (Mo. App.1977) ("The tort may be actionable between parents of the child where, by proper judicial decree, the sole custody of the child has been awarded to one of the parents." The Missouri court dismissed the father's action, however, because the custody orders upon which he based his claim were void for lack of proper notice); *LeGrenada v. Gordon,* 46 N.C.App. 329, 331–32, 264 S.E.2d 757, 758–59, *appeal on petition for review dismissed,* 300 N.C. 557, 270 S.E.2d 109 (1980) (interspousal suit under a valid custody agreement); *Fenslage v. Dawkins,* 629 F.2d 1107, 1109 (5th Cir.1980) (applying Texas law); *Sheltra v. Smith,* 136 Vt. 472, 392 A.2d 431 (1978) (cause of action for intentional infliction of mental distress resulting from denial of personal contact or communication with daughter allowed to be maintained); *Lloyd v. Loeffler,* 694 F.2d 489, 495–96 (7th Cir.1982) (applying Wisconsin law); *Kajtazi v. Kajtazi,* 488 F.Supp. 15, 18–21 (E.D.N.Y.1978) (applying New York law).[1] *See also Restatement (Second) of Torts* § 700 (1977); W. Prosser, *Handbook on the Law of Torts* (4th ed. 1971) § 124, at 883–84; 67A C.J.S. *Parent and Child* § 130, at 512 (1978); *see generally* Note, *Tortious Interference with Custody: An Action to Supplement Iowa Statutory Deterrents to Child Snatching,* 68 Iowa L.Rev. 495 (1983).

Another, similarly uniform, line of cases establishes the tort claim where the interference is instigated or furthered by relatives or other third parties. While these cases do not have spouses as defendants, they often spring from abduction of the child by a spouse. In all, the logic and language support a cause of action by a custodial parent against the other, noncustodial parent. *See Gibson v. Gibson,* 15 Cal.App.3d 943, 93 Cal.Rptr. 617 (1971); *Hinton v. Hinton,* 436 F.2d 211, 213 (D.C. Cir.1970), *aff'd w'out op.,* 492 F.2d 669 (D.C. Cir.1974); *Brown v. Brown,* 338 Mich. 492, 498, 61 N.W.2d 656, 659 (1963); *Oversmith v. Lake,* 295 Mich. 627, 295 N.W. 339 (1940); *Pickle v. Page,* 252 N.Y. 474, 169 N.E. 650 (1930); *Lisker v. City of New York,* 72 Misc.2d 85, 338 N.Y.S.2d 359 (1972); *McEvoy v. Helikson,* 277 Or. 781, 562 P.2d 540 (1977); *McBride v. Magnuson,* 282 Or. 433, 436, 578 P.2d 1259, 1259–60 (1978).

Frequently, in fact, the abducting spouse figures prominently in the case and is not a defendant only because he or she has fled with the child to a foreign jurisdiction. *See, e.g., Gibson,* 15 Cal.App.3d at 945, 93 Cal.Rptr. at 618; *Brown,* 338 Mich. at 495–97, 61 N.W.2d at 657–59; *McEvoy,* 277 Or. at 784, 562 P.2d at 542. This recurring scenario itself suggests the need for recognition of a civil claim for damages.

III. *Other Alternatives.*

There obviously are several remedies available to a victimized parent. Each of them, including the tort claim, however, has its limitations. (A tort claim will obviously furnish little deterrent or likelihood of recovery in the case of an impecunious defendant.) Concerning the use of alternative remedies in such cases, *see* Note *Tor-*

---

1. Two New York cases have refused to recognize a civil claim in suits between spouses. *See McGrady v. Rosenbaum,* 62 Misc.2d 182, 308 N.Y.S.2d 181, *aff'd* 37 A.D. 917, 324 N.Y. S.2d 876 (1970) and *Friedman v. Friedman,* 79 Misc.2d 646, 361 N.Y.S.2d 108 (1974). However, *McGrady* was a suit against a custodial parent for denial of *visitation* rights, not for interference with the right of custody, an interest of greater state concern. It is unclear from the *Friedman* opinion whether that case involved custody or visitation rights. The *McGrady* case has been criticized as unresponsive to the problems of interstate parental kidnapping, *see* P. Hoff, *Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law,* at 14–1, 14–15 (1982), and has not been seen as denying a claim for interference with custody. *See Kajtazi,* 488 F.Supp. at 19 (applying New York law).

*tious Interference with Custody, supra,* 68 Iowa L.Rev. at 500–15.

The case now before us illustrates how the tort claim can, more effectively than any of the alternative sanctions, serve both to prevent child-snatching and to pick up the pieces if it does occur.

A. *The UCCJA.* The Uniform Child Custody Jurisdiction Act, Iowa Code chapter 598A, is basically just that—a jurisdiction act. It provides no compensation for interference with custody in any case. In the present case, it would not even allow recovery of expenses, because the custody decree is not one of "another state." *See* Iowa Code § 598A.15. Because the uniform act provides no compensation for the plaintiff, it provides little or no deterrent to the defendant.

Professor Sanford Katz, chairman of the Family Law Section of the American Bar Association and editor-in-chief of the Family Law Quarterly, has written extensively on the UCCJA. He notes the widespread problem of child-snatching (estimated at 25,000 to 100,000 per year) and discusses the inability of the UCCJA alone to deal with the problem. He points out that this Act is largely jurisdiction-oriented, not remedy-oriented and concludes: "The parent entitled to custody of a child, but unlawfully deprived of it by the noncustodial parent, must still [after adoption of the UCCJA] seek relief in a number of traditional, well established methods." Katz, *Legal Remedies for Child Snatching,* 15 Fam.L.Q. 103, 105 (1981). A tort suit is one of the "traditional" remedies suggested. *Id.* In another publication, Prof. Katz says that "[a]nother lack of force [in the UCCJA] is that its provisions are not tied to any specific enforcement provisions, sanctions or parent-oriented remedies" and repeats his suggestion that "more direct sanctions" such as criminal prosecution or tort suits are needed. Katz, *Child Snatching: The Legal Response to the Abduction of Children,* at 33 (1981).

Patricia M. Hoff, director of the Child Custody Project, National Legal Resource Center for Child Advocacy and Protection of the American Bar Association, has also noted the ineffectiveness of the UCCJA in furnishing a complete remedy:

> Perhaps more so than other existing remedies in parental kidnapping cases, the child snatching tort suit holds great promise for compensating the victim parent to the full extent of his or her damages. While the Uniform Child Custody Jurisdiction Act makes it possible for the person entitled to custody or visitation to recover his or her attorneys' fees, court costs, and necessary travel and related expenses from the person violating the decree, a tort action ultimately expands both the nature and the amount of the recovery, and enlarges the number of potential defendants. All damages suffered by the plaintiff as a consequence of the wrongful conduct may be recovered in a tort action, including punitive damages in some instances and any person who assists the defendant-parent in the abduction, retention, or concealment of the child may conceivably be held liable.

P. Hoff, *Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law,* at 14–1 (1982).

B. *The kidnapping alternatives.* Other alternatives include prosecutions under federal and state kidnapping statutes. A kidnapping prosecution, however, provides for no recovery of expenses or compensation for the victimized parent. There is another problem more subtle, but real nevertheless: Cases with domestic overtones occupy a position of low priority with law enforcement personnel and prosecutors. In fact, this reality appears to be widely observed. *See Justice Dep't. Scored for Flouting Parental Kidnapping Act's Mandate,* 7 Fam.L.Rep. (BNA) 2739–42 (Oct. 6, 1981). In Iowa, child-snatching by a parent is only a misdemeanor, unless the child is removed from the state, in which case it is a felony. Iowa Code § 710.6. If the child is removed from the state, the chances of extradition are slim, again because of the domestic overtones of the cases and the inherent inertia of law enforcement personnel in dealing with them.

C. *The contempt alternative.* The usefulness of a contempt action is doubtful. It would provide no recovery of expenses or compensation, and if the party has left the state, any sanctions which are imposed will be of no effect. Further, it provides no basis for extradition. The weaknesses of the contempt alternative are noted in Katz, *Legal Remedies for Child Snatching, supra,* at 117–22, and in Katz, *Child Snatching, supra,* at 103–06. *See also* P. Hoff, *Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law, supra,* at 14–1.

One authority summarizes the advantages of the tort suit over the other alternatives: A tort suit will be more likely to effect a speedy return of the child; it will result in better cooperation by potential third-party defendants seeking to avoid the suit; potential punitive damages will serve as an additional deterrent; and increased knowledge of a child's whereabouts will result through the broad scope of civil-case discovery. Hoff, *id.* at 14–1.

We conclude that we should follow the majority of jurisdictions by recognizing and applying section 700 of the *Restatement.* The district court ruling must therefore be reversed, and the case remanded for further proceedings.

REVERSED AND REMANDED.

All Justices concur except WOLLE, J., who dissents joined by HARRIS and McGIVERIN, JJ.

McCORMICK, J., joins division I of the dissent.

WOLLE, Justice (dissenting).

I dissent because I believe the Restatement rule will have unacceptable practical consequences and because that rule is unlikely to be in the best interest of children affected by the litigation it spawns. I do not here quarrel with the seeming logic of the rule; if money damages can be recovered from a child-snatching stranger, why not from a child-snatching non-custodial parent. Neither do I disregard the fact that a majority of the jurisdictions which have addressed the issue, encouraged by commentators, have extended the cause of action to permit interspousal money-damage lawsuits for child-snatching. Logic, decisions from other jurisdictions, and views of authoritative commentators must carefully be considered. In the final analysis, however, the rule should be placed in its domestic setting and studied exhaustively in the light of competing policy considerations involving the family as a unit. Adopted, the Restatement rule would become an integral part of Iowa family law. Stripped to essentials, this new civil remedy which the plaintiff espouses is a new weapon for the arsenal of litigants engaging in marital or post-marital warfare. I propose a freeze on new weapons of domestic warfare. Our legislature has not included this cause of action in our body of Iowa family law and neither should this court.

I. We can reasonably predict that the majority opinion will initially generate a proliferation of money-damage lawsuits whose quantity and variety will be far out of proportion to their value. These lawsuits will burden a court system already straining to keep pace with cases now on file while continuing to deliver quality judicial services.

Recent statistical reports clearly show that domestic litigation weighs heavy on our judges' time. In 1981, actions arising directly from family problems accounted for 28,205 cases, or 48.4 percent of all civil filings. At the appellate level, cases involving domestic relations comprised 37.2 percent of all formal appellate decisions in appellate cases—the largest single category of dispositions. The number of rulings in domestic relations cases increased 42 percent from 1980 to 1981. *See* 1981 Annual Statistical Report to the Iowa Supreme Court by the Iowa Court Administrator, pp. iv–vii. The figures for 1982 show that domestic case filings and dispositions have decreased slightly in each category, but that welcome decline may be shortlived if the Restatement rule is now adopted. *See* 1982 Annual Statistical Report to the Iowa Su-

preme Court by the Iowa Court Administrator, pp. iv–vii.

We cannot accurately predict the number of lawsuits that will now be filed by family members on the law side of our burdened court dockets. Neither can we yet define their characteristics, though the variety may be limited only by the limits of trial lawyers' ingenuity. When parents seek redress for alleged violations of custody orders, their lawyers will be duty-bound to inform them of this decision. We know that parties in domestic cases may be motivated less by good sense—the best interest of their children or family economic concerns—than by their emotions. The tort here involved, after all, is for infliction of emotional distress. Will not lawyers studying this case reasonably conclude that many similar new actions may be permitted? Will not parents conclude, reasonably or not, that they desire to seek money damages from each other?

The gist of the instant action is the alleged violation of the final dissolution decree. Would this not logically invite a counterclaim for alleged violation of visitation provisions in most dissolution decrees? If a parent may bring such an action, might not each child similarly have an action against the parent for infliction of emotional damages? If a parent may bring such an action, why not also a grandparent with custodial or visitation rights? Would not alleged violations of joint custody provisions also give rise to multiple causes of action for the parents, their children, and other interested parties?

If alleged violations of a final or modified decree of dissolution can be the basis for this new cause of action, so also would be alleged violations of a temporary decree entered during the marriage. This spectre of concurrent equity and law actions during the marriage should deeply concern us. Completion of expected discovery procedures may well seriously delay trial of many dissolution actions. Money-damage lawsuits between the parents or other family members would certainly reduce the likelihood of reconciliation, a vital concern whenever a petition for dissolution of marriage is filed. See Iowa Code §§ 598.16, .19 (1983) (providing for conciliation procedures and a ninety day pre-decree waiting period).

These actions are at law, providing the parties the right to trial by jury of the issues. When, if ever, will the emotional distress be considered de minimis. What if a parent seeks compensation for emotional injury resulting from one week without the children? What if a grandparent is deprived of visitation for one weekend, or one day?

These potential causes of action are mentioned here to show that little else but logic supports them. Although they seem at first blush to be logical extensions of the Restatement rule, the utility of such new varieties of domestic lawsuit would clearly be outweighed by unacceptable consequences for our court system and affected family members. Even though this court today has adopted the Restatement rule in deciding this case, we should hereafter be careful not to extend that rule beyond the specific facts here alleged by plaintiff.

II. I believe the practical adverse effect which the Restatement rule may have on our court system and family members should first be studied carefully by the Iowa legislature before it is accepted as part of our body of Iowa family law. The legislature is better equipped than this court to obtain empirical data, conduct a detailed study, and utilize what such a study reveals.

Our legislature has already demonstrated in several ways that it is actively concerned about domestic relations law in general and deterrence of child-snatching in particular. The 1981 Iowa General Assembly addressed and revised our laws governing children of distressed marriages, encouraging joint custody and liberal visitation rights while reaffirming that the polestar for decisionmaking should be the best interests of the child. Iowa Code § 598.41 (1983).

Our legislature's concern for deterring child kidnapping has been manifested in the statutory remedies available to the custodial parent who is aggrieved by action of the

non-custodial parent. The Uniform Child Custody Jurisdiction Act, adopted by our Legislature in 1977, provides a means for enforcing custody decrees across state lines and specifically permits the court to assess against a person violating an out-of-state custodial decree "necessary travel and other expenses, including attorney's fees, incurred by the party entitled to the custody or by that party's witnesses." Iowa Code § 598A.15 (1983). Persons abducting minor children can be charged with criminal offenses under Iowa as well as federal criminal statutes. Iowa Code §§ 710.5, .6 (1983); 18 U.S.C. § 1073 (1976 & Supp. IV 1980). Additionally, our legislature has codified the traditional action for contempt of court in domestic cases. A court may punish a person who violates a custodial order in a temporary or final decree by imposing a fine or jail sentence. Iowa Code §§ 598.23, 665.4 (1983); see *Wilson v. Fenton,* 312 N.W.2d 524, 527–29 (Iowa 1981).

We should have laws which deter parental child-snatching, and the Iowa legislature has already enacted laws designed to accomplish that purpose. The parent contemplating child-snatching faces tough civil, criminal, and contempt sanctions. The plaintiff in this case has not demonstrated that these existing remedies are inadequate. I suggest that the statutory remedies already available should be time-tested and shown clearly to be inadequate before we authorize trial by jury of what are essentially child custody issues.

III. Regardless whether it is more appropriate for the Iowa legislature or this court to accept or reject the Restatement rule, that decision should turn on whether such a lawsuit between family members is in the best interest of affected minor children. This court has consistently held that in child custody cases the first and governing consideration is the best interest of the child. Iowa R.App.P. 14(f)(15); *In Re Marriage of Winter,* 223 N.W.2d 165, 166 (Iowa 1974). The legislature has expressly so provided in several statutes. *See e.g.,* Iowa Code §§ 598.41(1), (3); 598A.1(1), .8(2) (1983).

The instant case, and others here discussed, would arise from the same domestic discord as child custody cases, would be generated by the same family circumstances as child custody cases, and would either run concurrently with such cases (in the event temporary orders are violated) or follow in their aftermath. What will be the likely effects on the children of money-damage lawsuits?

Again, a detailed legislative study would provide us far more insight than our limited personal experience and instincts. Lacking such a study, we should at least consider worst-case possibilities and predict likely effects.

Worst-case examples need not be imagined—they will certainly soon occur. The litigants in many of our decided cases have proved they can go to great lengths in battling for custody of their children. *See, e.g., In Re Marriage of Bevers,* 326 N.W.2d 896 (Iowa 1982); *In Re Marriage of Schoonover,* 228 N.W.2d 31 (Iowa 1975). The emotional injury in many of these Iowa cases was certainly great, as was the vigor and ingenuity of the attorneys. Parents and their counsel will certainly use this new weapon skillfully, if not always wisely.

Certain will be the right to jury trial. Surely, the children often will be called as witnesses, pressed to choose sides—for one parent and against the other. Is this not contrary to the recently-enacted statute which encourages not only the granting of joint custody but also liberal visitation rights "which will assure a minor child frequent and continuing contact with both parents after the parents have separated or dissolved the marriage...."? Iowa Code § 598.41 (1983).

Certain will be the expense to the family unit of additional lawyers' fees and court costs. Monies needed for raising of children may often be sacrificed to the parents' continuing internecine struggle. Likely, too, will be prolonged bitterness among family members resulting from jury verdicts, whether damages be collected or denied.

I suggest that the Restatement rule is not only unneeded as a deterrent but also contrary to the best interests of most of the minor children who would be entangled in the litigation.

IV. Although some jurisdictions have adopted the Restatement rule, most have not yet addressed the issue. We would not be alone in holding that the rule should not be adopted by court decision. In *McGrady v. Rosenbaum,* 62 Misc.2d 182, 308 N.Y.S.2d 181 (1970), aff'd 37 A.D.2d 917, 324 N.Y. S.2d 876 (1970), the court refused to recognize a father's claim for damages based on the mother's alleged denial of his visitation rights. The court distinguished *Pickle v. Page,* 252 N.Y. 474, 169 N.E. 650 (1930), which involved abduction of a child from the custodial parent by a sheriff, then commented that "an action for damages or a damage verdict would probably be the least useful technique for the resolution of matrimonial differences or custody disputes." 308 N.Y.S.2d at 190. The court concluded:

> The remedy against a spouse who violates a court order respecting custody or visitation by removing the child from the state is by way of contempt or by precluding her standing to challenge the order or to enforce its support provisions, not by an action for damages. [citations omitted] Custody may be awarded to the father in an appropriate action, in such cases. [citations omitted] But this does not authorize damages.

308 N.Y.S.2d at 188. That New York decision was followed by *Friedman v. Friedman,* 79 Misc.2d 646, 361 N.Y.S.2d 108 (1974), in which the court quoted the above language from the *McGrady* opinion, distinguished other New York cases involving suit by the parents of infants against third parties, and held:

> It would appear, therefore, that as between the parents of the child, an action for damages for mental anguish resulting from interference with custodial rights is not actionable.

361 N.Y.S.2d at 110.

This court, like those two New York courts, should reject interspousal law actions for damages arising from violations of orders and decrees in dissolution actions. Our courts of equity should continue to address these serious problems for parents and their children without unduly burdening the law side of our crowded court dockets. Our courts can and should continue to deter child-snatching by encouraging speedy trial of criminal proceedings, imposing appropriate sanctions for contempt, and granting traditional forms of equitable relief when custodial orders are violated. The legislature, not this court, should decide whether new remedies are needed and, if so, whether such a cause of action as plaintiff here espouses is really in the best interest of our court system and, more importantly, the best interest of children whom their parents would involve in such litigation.

I would affirm the trial court's dismissal of this action.

HARRIS and McGIVERIN, JJ., join this dissent and McCORMICK, J., joins division I.