BROWN v. BROWN.

1. PARENT AND CHILD—CUSTODY OF YOUNG CHILDREN.

The mother is entitled to the care and custody of her children who are under the age of 12 years in the event she and her husband are separated and a court has the right to make such disposition of the children as will be in their best interest (CL 1948, § 722.541).

2. SAME—ABDUCTION.

One who, without a privilege to do so, abducts a minor child is liable to the parent, who is legally entitled to the child's custody.

3. SAME—ABDUCTION—CUSTODY OF CHILD—DAMAGES FOR DEPRIVATION.

A parent who is wrongfully deprived of the custody of his child may recover for the loss of society of his child, for the emotional distress resulting from the abduction and for loss of services.

4. CONSPIRACY—ALIENATION OF AFFECTIONS—ABDUCTION OF CHILDREN—EVIDENCE.

Evidence presented in wife's action for damages against husband's relatives for conspiracy to break up their marriage and for conspiracy to abduct and deprive plaintiff of the custody of her 2 young children *held*, to have established such conspiracies and participation therein by each of the defendants against whom judgment was rendered therefor.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation § 683; 39 Am Jur, Parent and Child §§ 11, 23.
[2, 3] 39 Am Jur, Parent and Child § 72.
[4, 11] 11 Am Jur, Conspiracy § 56.
[5] 53 Am Jur, Trial § 79 *et seq.*
[6] 20 Am Jur, Evidence § 994 *et seq.*
[7] 3 Am Jur, Appeal and Error § 263.
[9–11] 11 Am Jur, Conspiracy §§ 45, 47, 48.
[10] 11 Am Jur, Conspiracy § 54.

5. APPEAL AND ERROR—QUESTIONS TO WITNESSES—RULINGS ON FRIVOLOUS OBJECTIONS.

Trial judge's questions put to witnesses and rulings he made upon repeated and frequent objections, motions to strike and the making of other comments which were mainly captious or frivolous *held,* not to show bias upon part of trial judge.

6. EVIDENCE—RECORD IN ANOTHER SUIT.

The introduction of record in suit for divorce between plaintiff and her husband in action against his relatives for their conspiracy to break up the marriage and for their conspiracy to abduct her children whose custody had been awarded to her was not reversible error, where it had been introduced for purpose of showing the various orders, petitions and papers as had a bearing on instant case but without referring to testimony therein and defendant's counsel interposed only general objections and even assented to such limited use of the record.

7. APPEAL AND ERROR—TRIAL—OBJECTIONS TO RULINGS.

An objection made to the ruling of a trial court, which fails to clearly advise the trial judge of the specific ground on which it was made, does not justify reversal.

8. CONSPIRACY—TESTIMONY OF LAWYER—DAMAGES—EVIDENCE.

Testimony of Illinois lawyer in regard to professional services he had rendered in legal proceedings had in Illinois to regain custody of plaintiff's children for her was competent for purpose of proving an item of damages asserted in her declaration against former husband's relatives for conspiracy to abduct her children.

9. SAME—LIABILITY OF ALL FOR ACTS OF ONE.

Once a conspiracy is established, whatever was done in pursuance of it by one of the conspirators is to be considered as the act of all, and all are liable irrespective of the fact that they did not actively participate therein or the extent to which they benefited thereby.

10. SAME—PARTIES.

A joint action may be maintained against the conspirators for the damages caused by their wrongful acts, but all the conspirators need not be joined, as an action may be maintained against but one.

11. SAME—JOINT AND SEVERAL LIABILITY OF CONSPIRATORS.

The liability of conspirators to civil damages is joint and several, and, a conspiracy being shown prima facie, the plaintiff may give in evidence the acts and sayings of any conspirator done

or said in furtherance of the common purpose, whether that
conspirator be a party defendant or not.

Appeal from Wayne; Murphy (Thomas J.), J.
Submitted October 8, 1953. (Docket No. 37, Calendar
No. 45,938.) Decided December 29, 1953. Rehearing
denied February 18, 1954. Application for certiorari
filed in Supreme Court of the United States May 7,
1954.

Action by Adele Brown against Tamara Brown
and others for damages resulting from conspiracy to
alienate the affections of her husband and from con-
spiracy to abduct her children and deprive her of
their custody. Verdict and judgment for plaintiff.
Defendants appeal. Affirmed.

*Dann & Rosenbaum,* for plaintiff.

*William H. Brown* (*Joseph Sanders,* of counsel),
for defendants.

Butzel, J.  Adele Brown brought suit against
Tamara Brown, Eleanor Brown, Bertha Allen, her
sisters-in-law, Edward Allen, her brother-in-law, and
Louis Brown and Fanny Brown, her parents-in-law.
She also included Joseph Brown, another brother-in-
law, as a party defendant but he was not served with
process and the case evidently was dropped as to
him. In the amended declaration there remained 2
counts, 5 of the original 7 counts having been aban-
doned or dismissed. Count 1 against all of the de-
fendants, with the exception of Edward Allen who
was excluded as a defendant in that count by instruc-
tion of the trial judge, alleged a conspiracy which re-
sulted in alienating the affections of William H.
Brown, plaintiff's former husband. See CL 1948,
§ 551.302 (Stat Ann § 25.192). The second count al-
leged a conspiracy to abduct and deprive plaintiff of
the custody of her 2 young children. The 2 children

were surreptitiously taken from plaintiff by William H. Brown, her husband, allegedly with the collusion of the defendants, removed to South Africa without plaintiff's knowing what became of them for a considerable time thereafter, and not returned to plaintiff until she was put to great expense both in discovering the whereabouts of the children and in seeking to regain their custody. In the meantime she had become very sick due to worry. The jury awarded her damages of $50,000 on the first count from defendants Louis, Fanny, Tamara and Eleanor Brown, and $150,000 on the second count against all the defendants. On appeal defendants make no claim that these amounts are excessive.

The case presents a very unusual state of facts. Plaintiff produced considerable testimony to substantiate her claims and defendants produced no witnesses to refute plaintiff's claims or even try to explain their conduct. Defendants did call an attorney for plaintiff as a witness. His testimony in no way contradicted the testimony of plaintiff or the others who testified in her behalf.

Plaintiff married William H. Brown in December of 1940 and lived about 9 months in Lansing where her husband was employed. In order to supplement the family income she worked and continued to do so until about a month prior to September, 1941, when their son was born. Very shortly thereafter they moved to Detroit and lived in a 6-room lower flat where all of defendants resided. The Allens were not there all the time. While thus living with defendants plaintiff was constantly threatened by them; fault was found with her, and her marital life was made miserable by the interferences of the defendants. Evidently her husband was much influenced against plaintiff by the family's conduct toward her. In 1943 plaintiff and her husband and child moved to the upper flat of that home. Their

second child, a daughter, was born in 1945. Defendants' conduct continued and in 1945 plaintiff started a divorce suit but discontinued it shortly thereafter. In September of 1949 plaintiff testified that she could not stand it any longer and left the home on account of the defendants' alleged cruelty toward her. In October, 1949, her bill of complaint for divorce was filed.

In her declaration in this action plaintiff alleges in count 1 that defendants conspired together to break up the marriage; that they constantly found fault with her; that they threatened her, and all of them contributed to completely alienate her husband's affections; that plaintiff's husband William H. Brown seemed to be torn between 2 loyalties, that to plaintiff and that to his family, but the latter prevailed in alienating his affections for plaintiff. Plaintiff appears to be a woman of ability and refinement and was musically inclined. She had studied piano and singing and a piano was purchased so that she might continue her music and also teach her 4-1/2-year-old son. The family objected to the piano playing. We attach little importance to this incident and only mention it to possibly show the animus against plaintiff.

Plaintiff's husband, as a copartner with Tamara and Eleanor, owned 2 retail stores, which were called "The Brownie Stores," and he and his sisters worked there. Plaintiff also worked at the store at odd times but not continuously and her absence from the stores caused further difficulties. Various efforts were made toward a reconciliation and it looked as if at last it might have been successful had it not been for the family's interference. Brown seemed to be more attached to defendants than to his wife.

In February, 1950, Brown and his sister Tamara took the 2 children over the weekend to Chicago and secretly obtained passports to go abroad. On March

30, 1950, he was permitted by plaintiff to take the younger child for the purpose of buying some clothes for her. He also obtained possession of the older child who was at school, and then Brown and the children disappeared. Plaintiff was told by defendants Bertha and Edward Allen that she would never see her children again. She became distraught and very sick and had to be hospitalized for 3 weeks. By strenuous efforts of her attorneys and the assistance of the department of State in Washington and the use of court process it was discovered that Brown had taken the children to South Africa, but his exact whereabouts there was not known until later. Through appeal to Washington, Brown's passports were cancelled and he returned with the children to the United States. They arrived at New Orleans. Arrangements were made to place the children in a boarding home in Texas, but subsequently the children were taken to Chicago. Through local and Illinois courts and at great expense for attorneys, the children were eventually returned to plaintiff. Plaintiff as a result suffered much mental strain and physical illness.

Defendants claim on appeal that no order was ever entered giving plaintiff the exclusive custody of the children. Her attorneys possibly did not think it necessary to secure such an express order but relied on the statute, CL 1948, § 722.541 (Stat Ann § 25.311), which provides that in the event of separation of husband and wife the mother shall be entitled to the care and custody of all such children under the age of 12 years. The court always has the right to make such disposition of the children as will be in their best interest. After Brown had taken the children away, an order *nunc pro tunc* was entered giving plaintiff exclusive right to the children. However, it must have been understood prior to the time that Brown abducted the children that plaintiff was

entitled to their custody because plaintiff had been awarded temporary alimony for their support. Just prior to the time that Brown removed the children from this country, he filed in the divorce proceedings a petition for visitation privileges, but no order was entered as Brown, in the meantime, had abducted the children and taken them to South Africa. The petition for visitation privileges in Brown's behalf was signed by his attorney at that time, a man of high standing at the bar. He withdrew from the case shortly thereafter.

Appellants claim in their appeal that the cause of action asserted by plaintiff in count 2 of her declaration, conspiracy to deprive a parent of custody of her children, is not recognized in Michigan. In *Oversmith* v. *Lake*, 295 Mich 627, defendants were held liable for the abduction and false arrest of plaintiff's minor children. It is there stated:

" 'One who, without a privilege to do so, abducts a minor child * * * is liable to the parent, who is legally entitled to the child's custody.' 3 Restatement, Torts, p 502, § 700."

The damages recoverable in such an action are not limited to the loss of services. The parent wrongfully deprived of the custody of his child may recover for the loss of society of his child and for the emotional distress resulting from the abduction. *Pickle* v. *Page*, 252 NY 474 (169 NE 650, 72 ALR 842); *Steward* v. *Gold Medal Shows*, 244 Ala 583 (14 So2d 549); 3 Restatement, Torts, § 700, comment g.

Before Brown left for South Africa he transferred his interest in the stores to some of the defendants. The defendants seem to have worked in concert. Plaintiff testified that her husband's parents, Louis and Fanny Brown, warned her not to try to move away from the house. The mother misled plaintiff

by telling her at first that the children might be in Chicago. The father denied having any knowledge of the whereabouts of the children when the habeas corpus proceedings first were brought. The father would not permit plaintiff to remove her personal belongings from the house during the pendency of the divorce proceedings and at that time the mother struck plaintiff and the father called her what she termed "awful names."

Defendant Tamara Brown seemed to have been more vicious than the others. Plans of plaintiff and her husband had to be discussed with Tamara and receive her approval. She told plaintiff to make arrangements to leave the children and go to work; that she and her husband had to listen to and do whatever she wanted of them. Tamara made some of the arrangements for the children's passports and made part of the financial arrangements for the trip. She accompanied Brown and the children to England but returned home when he and the children left for South Africa. Brown transferred his assets to her in order to enable him to travel more freely in South Africa. About a year later Tamara together with defendants Bertha and Edward Allen drove 2 automobiles to New Orleans when the children arrived on their return from South Africa. She participated in the arrangements to place the children in a Texas boarding home. Tamara at the hearing of the petition for writ of habeas corpus denied having any knowledge whatsoever as to the whereabouts of the children. She physically attacked plaintiff. Tamara told plaintiff that she was working for her; that plaintiff had to do what she told her.

Defendant Eleanor Brown was also one of the transferees of Brown's interest in the stores before he left for South Africa. At the habeas corpus proceedings she claimed she did not know where the children were. Plaintiff had a serious operation in

Ann Arbor some time prior to her marriage to Brown. Eleanor raised suspicions in Brown's mind about the nature of the operation so that plaintiff found it necessary to take Brown to Ann Arbor to prove that the operation had in no way affected her mind or character.

Defendants Bertha and Edward Allen left their home in Texas and came to Detroit in March, 1950, to take over the operation of the stores thereby enabling Tamara and William Brown to leave with the children for South Africa. With Tamara they drove an extra automobile to New Orleans to meet Brown and the children and made arrangements to place the children in a home. They denied having any knowledge of the children's whereabouts.

Review of the entire testimony shows that there was a concerted effort on the part of the defendants to break up the marriage and later to abduct the children. We believe a conspiracy was shown in which each of the defendants played a part.

The case was defended in a very unique manner, counsel for defendants constantly interposing repeated and frequent objections, motions to strike, and making other comments. We might characterize them in the main as captious, frivolous, and they were properly overruled by the trial judge. On the first 25 pages of the record before us there are 50 such improper objections, et cetera. It has beclouded the record and we can readily see how the jury might possibly have been unfavorably impressed by such conduct. On appeal complaint is made that the trial judge's conduct was prejudicial. In the brief for appellants, counsel referred to a colloquy which arose after plaintiff testified that she was happy to assist in the business conducted by her husband and members of his family but that she could not do so when her child was ill; that defendants would come home from the store at night and shout and call plaintiff names

and threaten her unless she did what they told her to do. Thereupon, the following took place:

"*Mr. Sanders:* I move to strike it as all conclusions, what they said. It is characterization. She is characterizing that they shouted.

"*The Court:* Can't you tell when people shout at you? Isn't that a fact?

"*Mr. Sanders:* There is no necessity in becoming so facetious about it. I am raising these objections because they are proper.

"*The Court:* It appears to me you are objecting to every word that she says.

"*Mr. Sanders:* That is my duty, and I think it is incumbent upon me to do so.

"*The Court:* When the woman says somebody shouts and you say that is a conclusion?

"*Mr. Sanders:* Get her entire answer.

"*The Court:* Then it appears to me that the objection is facetious. Go ahead.

"*A.* So they threatened me if any little thing didn't go according to their wishes.

"*Mr. Sanders:* Same objection.

"*The Court:* Same ruling. What did they threaten you with?

"*A.* That it will lead to a divorce, and everything. I can't even repeat those words, what they said to me.

"*The Court:* What do you mean, you can't repeat those words?

"*A.* I don't use those words. I am not too familiar with them. They are very bad words.

"*Q.* Well, if you can use those words in keeping with your dignity, try and say them. It is not because we are—

"*A.* It was a constant threat.

"*The Court:* You mean they constantly threatened what would happen if you didn't do these things?

"*A.* That it will lead to a divorce or it will lead me to a mental institute.

"Yes, during those conversations and threats all the defendants were present at one time or another.

After these discussions I would wait a few days and then go to the person and talk to them calmly."

In spite of the many interruptions and objections without any merit by defendants' counsel, we find that the trial judge exercised commendable restraint. The questions he asked were proper and his rulings show no bias.

This is a companion case to that of *Brown* v. *Brown*, 335 Mich 511, wherein we affirmed a divorce decree obtained by Adele Brown from William H. Brown. The record in that case is very similar to that in the instant case and was referred to from time to time during the trial of the present case but only to show various orders, petitions, et cetera, as had a bearing on the present case. The testimony contained therein was not referred to. Although defendants' counsel often interposed general objections to the use of this record, he at other times assented to the use of the record for the limited purpose set forth. The following colloquies took place during the trial:

*"The Court:* Well, the record is in evidence, as I understand it, only for the purpose of these orders that were entered in the lawsuit, and the petitions, and not for any testimony taken in the other case.

*"Mr. Sanders:* That is right, your Honor."

And later in the trial:

*"The Court:* Do you wish to introduce it?

*"Mr. Sanders:* Yes, the book, which is known as the record in the Supreme Court of the State of Michigan, appeal from the Honorable Miles N. Culehan, Circuit Judge, calendar No. 45,618, wherein Adele Brown is plaintiff and William Brown is defendant."

The orders, injunctions, decrees, et cetera, contained in the record of *Brown* v. *Brown, supra,* were relevant to the issues in the instant case. If the record as admitted was subject to any objection, the

trial court was not apprised of the specific ground of objection. In *Humphries* v. *Complete Auto Transit, Inc.,* 305 Mich 188, the Court stated:

"If anything is settled by our decisions, it is that, unless an objection clearly advises the trial court of the specific ground upon which it is made, it will not justify a reversal."

See, also, *Detzur* v. *B. Stroh Brewing Co.,* 119 Mich 282 (44 LRA 500, 5 Am Neg Rep 371), and citations therein.

Error is asserted in permitting plaintiff's witness, a member of the Illinois bar, to testify in regard to legal proceedings instituted in Illinois to regain custody of the children. This witness testified as to the professional services he had performed in those proceedings. The testimony was competent for the purpose of proving an item of damages asserted by plaintiff in her declaration.

The conflict in evidence in regard to whether defendants herein were named as defendants in the Illinois proceedings is immaterial. William Brown was named as a defendant in those proceedings. The allegations of plaintiff's declaration set forth a conspiracy between William H. Brown and the present defendants to deprive her of the custody of her children; testimony during the trial substantiated that allegation. The acts of William H. Brown in furtherance of that conspiracy would be attributable to the defendants as co-conspirators. In *Warsop* v. *Cole,* 292 Mich 628, we stated:

"There is no question but that the conspiracy between the parties having been once established, whatever was done in pursuance of it by one of the conspirators is to be considered as the act of all, and all are liable irrespective of the fact they did not actively participate therein or the extent to which they benefited thereby."

In *Hanover Fire Insurance Company of New York* v. *Furkas,* 267 Mich 14, this Court said:

" 'A joint action may be maintained against the conspirators for the damages caused by their wrongful acts, but all the conspirators need not be joined; an action may be maintained against but one.' 5 RCL, p 1103.

" 'But the liability of conspirators to civil damages is joint and several, and, a conspiracy being shown prima facie, the plaintiff may give in evidence the acts and sayings of any conspirator done or said in furtherance of the common purpose, whether that conspirator be a party defendant or not.' *Schultz* v. *Frankfort Marine, Accident & Plate Glass Ins. Co.,* 151 Wis 537 (139 NW 386, 43 LRA NS 520)."

Numerous other errors are claimed by defendants. We have examined them. Even if there were any merit to them, they would be nonprejudicial.

Two judgments were returned. They are both affirmed, with costs to the plaintiff.

DETHMERS, C. J., and ADAMS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.