**Jo Ann PERKINS, Plaintiff-Appellant,**

v.

**Jean RANTZ, Defendant-Respondent.**

**No. 12124.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 12, 1982.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied April 5, 1982.

Application to Transfer Denied May 17, 1982.

John Moody, Mark Gardner, Bradley J. Fisher, John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for plaintiff-appellant.

Gregory J. Smith, Springfield, for defendant-respondent.

PREWITT, Presiding Judge.

Plaintiff's two count petition sought possession of a 230 acre farm in Christian County and requested that title to it be quieted in her. Defendant's answer and counterclaim contended that the deed under which plaintiff claimed all interest in the farm should be set aside because, among other grounds, it was executed by defendant while under the undue influence of plaintiff. The trial court found that defendant signed and delivered the deed as the result of undue influence and set it aside.

Plaintiff contends that the trial court's judgment was erroneous in setting aside the deed for undue influence because: (1) The judgment was "Against The Greater Weight Of The Evidence In That Defendant Herself Testified That She Volunteered To Have The Deed Prepared And Executed And Did So With Knowledge And Understanding Of The Effect Of The Deed After Receiving Independent Advice Of An Attorney Not To Execute The Deed"; (2) "The Judgment Of The Trial Court Erroneously Applied The Law In Holding That Plaintiff Was In A Confidential And Fiduciary Relationship With Defendant Because Plaintiff Exercised No Actual Control Over Defendant's Business Affairs And Transacted No Business For Defendant"; (3) "The Judgment Of The Trial Court Erroneously Declares The Law In Holding That Plaintiff's Conduct, Though Not Amounting To Active, Intentional Fraud Or Misrepresentation Constituted Undue Influence As A Result Of Defendant's Perception Of That Conduct, Because A Finding Of Undue Influence Requires Some Intentional Fraud Or Misrepresentation On The Part Of The Wrongdoer"; and (4) "The Judgment Of The Trial Court Erroneously Applied The Law In Finding Undue Influence, In That Plaintiff's Conduct, Even If Viewed In The Light Most Favorable To Defendant, Did Not Destroy The Will Power Or The Free Agency Of Defendant."

Plaintiff, the oldest child of Clell Rantz, was born of his first marriage. Two male children were born of his second marriage. Defendant was his third wife. She had two children by a prior marriage. Defendant and Clell Rantz had no children during their marriage. At the time of trial plaintiff was 37 years old. When the deed in question was executed, the defendant was 42 years old. Clell and defendant were married on June 25, 1964 and lived as husband and wife on the farm until his death on April 19, 1979. Defendant has continued to reside on the farm since then. Plaintiff lived on the farm for ten to twelve years, until she was married on July 2, 1960 to Delbert Perkins. Plaintiff apparently maintained a close relationship with her father and had a good relationship with defendant until after her father's death.

On March 28, 1979, Clell was admitted to Cox Medical Center in Springfield and three days later was informed that he had inoperable terminal lung cancer. He went home during the weekend of March 31 through April 1, 1979. That weekend plaintiff told him "he needed to get his affairs in order." After Clell returned to the hospital, at his request Joe Emerson, a relative of his, contacted Ed Lee, a Springfield attorney. Lee came to the hospital to see Clell Rantz. Clell informed Lee that he wanted defendant to have the right to remain on the farm as long as she lived or desired, but also wanted his sons and plain-

tiff ultimately to have an interest in the farm. At that time the farm was titled solely in Clell's name. He told Lee he wanted the farm deeded to plaintiff and defendant as joint tenants, and would rely on plaintiff to provide an interest in the farm to his sons when she deemed it advisable.

On April 6, 1979, Lee returned to the hospital with documents he had prepared at Mr. Rantz's request. A will was executed at that time. Clell also signed a bill of sale conveying to himself and defendant as joint tenants all of the cattle, farm equipment and supplies on his farm. In addition, he and defendant signed a quitclaim deed conveying the farm to himself, plaintiff and defendant as joint tenants with right of survivorship.

After Lee left the hospital room he saw plaintiff and defendant sitting together in the hallway. He gave the quitclaim deed to defendant and advised her to record it. Defendant attempted to record the deed the next day but it was a Saturday and the Christian County Courthouse was closed. Later that day defendant gave the quitclaim deed to plaintiff and asked her to record it. Plaintiff recorded it on Monday.

That weekend plaintiff and her husband, Delbert Perkins, read the will and quitclaim deed. There was evidence that Delbert Perkins called Ed Lee and stated they were not happy about the deed and tried to discuss it with Lee but Lee refused to talk with Perkins about it.

Defendant stayed in her husband's hospital room all night on Sunday, April 8, 1979. The next morning she left the hospital room when plaintiff and her husband arrived. As she was going back to the room Delbert Perkins asked her if she had read the will. She said she hadn't. He said that "It's not at all what Clell wants." He told her that she "got everything" and "each of the boys got $10,000 and JoAnn got a lousy $1,000". Defendant said she responded, "I was sure that wouldn't have been right." Defendant then entered the hospital room and accord-

ing to her testimony, which the trial court found to be "more credible" than plaintiff's version, the following discussion took place regarding the deed:

"She [plaintiff] said, 'I won't accept it. I won't have it this way. I will not have it this way. You can have—Your name is under dad's. You can sell the place. It's no good to me. It will benefit me nothing. Your name—It's Clell Rantz, Jean Rantz, and JoAnn Perkins, you'll sell it.' At that time Clell woke up. And he said, 'If you're going to fight about the damn thing, give it here and I'll tear it up.'"

Defendant said that Clell Rantz was upset and after his comment she said, "No. We'll settle it later." Plaintiff apparently believed that because defendant's name was stated before plaintiff's in the deed that after Clell's death defendant could sell all interest in the farm free of any claim of plaintiff. Later, defendant's sister-in-law, Irene Emerson, came into the room and stayed with Clell while plaintiff, defendant, Delbert Perkins, and Joe Emerson went to the coffee shop. There plaintiff told defendant that when her dad was gone she would never come back to the farm. Defendant testified she then told plaintiff, "If it would ease her mind and Clell's, I would take my name off the deed." Defendant testified that plaintiff told her it would always be her farm as long as she was alive and defendant thought that she had plaintiff's word that she could remain there as long as she wished.

Later that day defendant went to Lee's office and instructed him to draft a second quitclaim deed, to take her name "off the deed". Lee advised defendant that she should provide some protection for herself such as reserving a life estate or leasing the farm. Defendant declined to follow Lee's advice because she "trusted JoAnn" and thought she could live on the farm as long as she wished. Lee prepared and she signed a deed conveying her interest in the farm to Clell Rantz and plaintiff as joint tenants with right of survivorship. No con-

sideration in money or property was exchanged for this deed. It was recorded by plaintiff's husband on April 10, 1979. Clell Rantz died on April 19, 1979. This action was commenced on August 2, 1979.

In a bench tried case we should affirm the judgment unless there was no substantial evidence to support it, unless the judgment was against the weight of the evidence, or unless the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We should set aside the judgment on the ground that it is against the weight of the evidence "with caution and with a firm belief that the decree or judgment is wrong." Id.

Evidence sufficient to cancel a deed must be "clear, cogent, and convincing." *Bolin v. Anders*, 559 S.W.2d 235, 241 (Mo.App.1977). In deciding if the evidence was sufficient, we take defendant's evidence as true, disregard plaintiff's evidence unless it aids defendant and give defendant the benefit of every favorable inference which may be drawn from the evidence. *Salisbury v. Gardner*, 515 S.W.2d 881, 883 (Mo.App.1974).

Undue influence is "influence which, by force, coercion or overpersuasion destroys the free agency of the grantor to act." *Davis v. Pitti*, 472 S.W.2d 382, 387 (Mo.1971). What constitutes undue influence depends on the circumstances of each particular case; it is a species of constructive fraud which is not defined by any fixed principles because to do so may provide a manner by which the unscrupulous may avoid its application. *Shafer v. Hatfield*, 359 Mo. 673, 223 S.W.2d 396, 401 (1949).

"It is absolutely impossible for any court or law writer to lay down a hard and fast rule by which the legal sufficiency of facts to establish undue influence in the making of a deed can be measured. In this respect each individual case must stand on its own bottom. It is, however, certainly necessary

for the attacking party to introduce some tangible and satisfactory proof, direct or circumstantial, that the grantor's free will has been overcome by the undue influence alleged, so that the deed does not in fact express his (grantor's) wishes, as to the disposition of his property, but the wishes of the person exercising the undue influence." *Besteiro v. Besteiro*, 65 S.W.2d 759, 762 (Tex.Com.App.1933).

There are several relevant factors to be considered here in determining if there was undue influence. Lack of consideration, and a party's mental and physical condition, are material in considering if undue influence was present. *Davis v. Pitti*, supra, 472 S.W.2d at 387. Absence of consideration is not alone sufficient to cancel an executed deed, but where there is little or no consideration, equity requires only the slightest circumstances of fraud, duress or mistake. *Drake v. Greener*, 523 S.W.2d 601, 606 (Mo.App.1975). Another relevant consideration is whether there is an unnatural disposition of property. Id. 523 S.W.2d at 607. Even though defendant was a relatively young woman and apparently of sound mind, she could still have been unduly influenced. See *Houghton v. West*, 305 S.W.2d 407, 413 (Mo.1957); *Shafer v. Hatfield*, supra, 223 S.W.2d at 402. A finding of undue influence does not depend upon establishing a confidential or fiduciary relationship but can be based on other facts and circumstances. *McCormack v. Berking*, 365 Mo. 913, 290 S.W.2d 145, 151 (1956); *Matthews v. Turner*, 581 S.W.2d 466, 472 (Mo.App.1979).

The evidence indicated that at the time defendant signed the deed she was nervous and upset because of her husband's condition. She had recently undergone major surgery and was still in a period of recuperation. She was under medication for her nervous state and had little sleep the night before. She made the deed to plaintiff in an effort "to back her off" and not "put Clell through more misery", believing she would still be able to live on the farm.

· It was unnatural for defendant to give up any right to live on the farm and to lose the interest she had in it for no consideration so that neither she nor her children would thereafter have any right to it. Defendant had a marital interest in the property, see §§ 474.150 and 474.160, RSMo 1978, whereas no similar right existed in plaintiff. Nevertheless, if the deed is valid, plaintiff has obtained defendant's interest in the farm, even though she was already receiving substantially more of her father's assets than his other children.

We do not think, as plaintiff contends, that there can be no undue influence because defendant "volunteered to have the second deed prepared". Plaintiff said that because defendant's name was listed before hers on the first deed that after Clell's death defendant could sell the property and plaintiff would end up with no interest in it. If plaintiff truly believed this, that belief was so adamant that she did not bother to seek proper legal advice or if she did so and learned that it was not true, she still used this contention to her advantage. In either event, the attitude she displayed and the position she took was unreasonable and under the circumstances could have coerced defendant to make the deed in question. It might have appeared to defendant that the only way she could have unquestionably satisfied plaintiff and have prevented a further outburst in Clell's presence was by a deed in which defendant relinquished all interest in the farm.

That defendant got sound legal advice and did not follow it is an element to be considered, but it does not prevent her from being controlled by plaintiff's undue influence. The coercion by plaintiff may have already so severely influenced defendant that she felt there was only one way to stop Clell from having further aggravation and she then put aside all thoughts of her well-being and that of her children in an effort to make his last days as comfortable as possible. Neither plaintiff's presence during the signing of the deed nor an exertion of her influence at that exact moment was required to prove undue influence. What is required is proof of facts from which an inference can arise that the undue influence was an active factor in the transaction. *Bolin v. Anders*, supra, 559 S.W.2d at 241; *Davis v. Pitti*, supra, 472 S.W.2d at 388.

Undue influence does not require an affirmative showing of actionable fraud or misrepresentation. If actionable fraud or misrepresentation was present that would be sufficient to set aside the legal instrument in question and there would be no point in a grantor claiming undue influence. Improper acts may be necessary, see *Drake v. Greener*, supra, 523 S.W.2d at 606, but we do not think those need to be acts amounting to legal fraud or misrepresentation.

We think plaintiff's conduct and at least the inference that the conduct might continue, showed sufficient coercion to justify the trial court's determination that defendant executed the deed as a result of undue influence. The trial court found that a confidential relationship existed between plaintiff and defendant, but we do not believe that is necessary to a finding of undue influence here.

The judgment is affirmed.

MAUS, C. J., and BILLINGS, J., concur.