Carol Leineweber KRAMER,
Plaintiff-Respondent,

v.

Grace L. LEINEWEBER,
Defendant-Appellant.

No. 12452.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 3, 1982.

Rich D. Moore, Moore, Brill & Wagoner, P.C., West Plains, for plaintiff-respondent.

John Alpers, Jr., Cabool, for defendant-appellant.

PREWITT, Judge.

Plaintiff sued her ex-husband, William F. Leineweber, and his mother, defendant Grace L. Leineweber, contending that they conspired to prevent her from having custody of Wendie Fay Leineweber. Service could not be obtained upon William F. Leineweber and the claim against him was dismissed without prejudice. Following nonjury trial judgment was entered in favor of plaintiff for $26,000 actual damages and $25,000 punitive damages. Defendant appeals.

We review this matter as provided in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976) giving due regard to the opportunity of the trial judge to determine the credibility of the witnesses. *In re Marriage of Davault,* 636 S.W.2d 422, 424 (Mo.App. 1982). As no findings of fact were requested or made, we consider all fact issues as having been found in accordance with the result reached. Rule 73.01(a)(2). *In re Marriage of Davault, supra,* 636 S.W.2d at 424.

A tort action against one who deprives a parent of a child has long been recognized in Missouri and other jurisdictions. See *Kipper v. Vokolek,* 546 S.W.2d 521, 525–526 (Mo.App.1977); *Rosefield v. Rosefield,* 221 Cal.App.2d 431, 34 Cal.Rptr. 479 (1963); *Brown v. Brown,* 338 Mich. 492, 61 N.W.2d 656 (1953); Restatement, Second, Torts § 700; 59 Am.Jur.2d, Parent and Child, § 108, p. 206. A civil conspiracy exists if there is an agreement or understanding between persons to do an unlawful act. *Mills v. Murray,* 472 S.W.2d 6, 12 (Mo.App.1971).

In each of defendant's first two points is the contention that the evidence was insufficient to show a conspiracy. In deciding if the evidence was sufficient, we take plaintiff's evidence as true, disregard defendant's evidence unless it aids plaintiff and give plaintiff the benefit of every favorable inference which may be drawn from the evidence. *Perkins v. Rantz,* 631 S.W.2d 907, 911 (Mo.App.1982).

Plaintiff and William F. Leineweber were married in Chicago, Illinois in 1968. Wendie Fay was born on February 16, 1969. When she was two months old the family moved to California where they lived for approximately five years. While in California William and Carol adopted Leonard, then four and one-half years old. The family then moved to Billings, Montana where they were living when plaintiff and William separated in June of 1976. While separated, William and plaintiff agreed that the children should stay with plaintiff's foster mother, Gloria Keith, in Tucson, Arizona.

On July 16, 1976 Carol filed a petition for divorce in Billings, Montana. On approximately August 1, 1976 William moved in with the defendant who lived near Willow Springs, Missouri. On August 7, 1976 William and defendant arrived at Gloria Keith's residence in defendant's automobile. Plaintiff and the two children were there. On the pretense of taking Leonard "to talk to him", defendant took him to the vehicle and put him inside. After a struggle with plaintiff which resulted in William knocking her unconscious, William took Wendie and put her in the vehicle. Leonard got out of the vehicle and Wendie, William and defendant then drove to defendant's home near Willow Springs.

Wendie was enrolled in school in West Plains from August 23, 1976 until September 6, 1977. Part of that time William and Wendie lived with defendant and part of the time they lived with William's sister in Willow Springs. In November of 1976 William instituted an action for Wendie's custody in the Circuit Court of Howell County.

The Montana divorce proceedings were heard in January of 1977 and William and defendant were present when they commenced. In April of 1977 the Montana court found that plaintiff "is a more stable person than" William, and awarded plaintiff custody of the children, subject to William's reasonable visitation. On October 5, 1977 the Howell County Circuit Court entered judgment in favor of plaintiff in the action commenced there by William, and she instituted a habeas corpus action that day seeking Wendie, but William and Wendie could not be located.

In February 1980 a deputy juvenile officer investigated a report that Wendie was not attending school. He went to defendant's home "probably two to three times a week for about four to five months." Cars were in the driveway about "99% of the time" he was there, and there "was always a bunch of cats on the back porch with fresh food put out for them." At times he heard "movement in the house" but no one answered the door. In the latter part of February he phoned and told defendant who he was and that he wanted to talk to her and her son about seeing that Wendie was put in school. She replied, "This is none of your business. The child is being taught. And her or her daddy is not in the State of Missouri." Then defendant hung up. On July 15, 1980, with "a court order" he went to defendant's home. The front door was open and defendant came to the door. While talking to defendant at the front door, he saw Wendie and defendant told him she was a different granddaughter. After the juvenile officer insisted that he be allowed to talk to the child, defendant agreed to take Wendie to the courthouse in West Plains by driving her vehicle. The officer followed them in his car. Defendant called William who worked nearby, either while the officer waited outside for her and Wendie to get ready, or after she left the courthouse.

At the courthouse defendant said that they were not going to take her granddaughter and that "justice is not justice around here." Defendant and Wendie disappeared from the courthouse while the juvenile officer answered a phone call. Shortly afterwards Grace and William were separately found near the courthouse. William was hiding under a storage tank. Wendie has not been located by the juvenile authorities or plaintiff since then.

■ Defendant's first point contends that the trial court erred in entering judgment for plaintiff because there was no substantial evidence that defendant participated in a conspiracy with others to violate the Montana decree as there was no evidence that defendant knew of the existence of the decree or of its legal effect. While it has been said in Missouri that a conspiracy must be proved by clear and convincing evidence, it may be, and often must be established by circumstantial evidence. *National Rejectors, Inc. v. Trieman,* 409 S.W.2d 1, 50 (Mo. banc 1966). The circumstances indicate that defendant was actively aiding and working with William to keep Wendie from plaintiff and an understanding between them to that effect may easily be inferred from their conduct.

The evidence was sufficient to show that defendant was aware of the Montana decree and its effect. She went with her son to the proceedings in Montana and was there at the initial morning session. After the decree her son lived with her and at his sister's house nearby. It is highly unlikely considering her involvement that defendant did not know about the Montana decree. Her lying and comments to the juvenile authorities indicated that she knew that plaintiff had a legal right to custody and the trial judge may have inferred from the circumstances that she assisted Wendie in leaving the courthouse for that reason. Their leaving the courthouse indicates that defendant was concerned with something other than the investigation into Wendie's schooling. If she was being properly taught as defendant had earlier indicated, they had nothing to fear. Even if not, their action was drastic if they feared only the investigation by the juvenile authorities. It is more likely that defendant was afraid plaintiff's West Plains attorney would learn where Wendie was.

■ Under the holdings of some authorities a custody order is not required for a parent to maintain an action against a third party even when the third party is only assisting the other parent who has an equal right to custody. See *Rosefield v. Rosefield,* supra, 34 Cal.Rptr. at 481. See also *Brown v. Brown,* supra. However, this action was brought on the theory that defendant and William "conspired and acted in concert with each other to thwart and circumvent the said [Montana] court order", and we need not decide if under plaintiff's petition knowledge of the Montana court order by plaintiff was essential to plaintiff's case as it is apparent to us that defendant had such knowledge. Point one is denied.

■ Defendant's second point contends that the trial court erred in considering her acts and William's in removing Wendie from Gloria Keith's house because William had temporarily placed the child with Gloria Keith and there was no evidence of appellant's participation in a conspiracy at that time and because the taking was legal as William had an equal right to the custody of Wendie at the time. No objection was made at trial to the testimony now complained of and thus no error regarding this evidence is preserved for our review. *Niederkorn v. Niederkorn,* 616 S.W.2d 529, 535 (Mo.App.1981). We do believe, however, that those acts are relevant for the court to consider. They indicate that defendant and her son had an understanding at that time to keep Wendie from plaintiff and perhaps to ignore the court decree if they did not agree with it, a position which they continued to take long after the decree. The acts are consistent with their later acts and show that they were working together to deprive plaintiff of custody of Wendie. Point two is denied.

Defendant's third point contends the trial court erred in admitting into evidence exhibit 2, a document purporting to show plaintiff's legal, investigation, and travel expenses in her search for Wendie. Defendant contends that no proper foundation was made as to the exhibit's accuracy, that it was hearsay, was not the best evidence,

was self-serving, called for conjecture and speculation, and the damages it intended to prove were not recoverable. The only contentions developed in the argument portion of the brief following this point are that no proper foundation was laid for it, and that legal fees and travel expenses in connection with this litigation were included. Therefore, we consider only these contentions. *Berry v. Federal Kemper Insurance Company,* 621 S.W.2d 948, 952 (Mo.App.1981). Point four contends that the trial court erred because there was no substantial evidence to support its finding that respondent sustained actual damages of $26,000 and that this finding was based on the improper expenses shown on exhibit 2. As these points are closely related, we consider them together.

■ Plaintiff testified that exhibit 2 represented her "expenses for my lawyers and my trips as to finding my Wendie." Apparently she considered this action as another step in the furtherance of that attempt. Defendant contends that there was no evidence "as to where the figures came from or who prepared the document", but we think that was not necessary in view of plaintiff's testimony that the figures were expenses she had paid or owed in her search for Wendie. Who prepared the document would be irrelevant if it was accurate. Plaintiff is entitled to recover for reasonable expenses incurred in attempting to retain custody of Wendie. See Restatement, Second, Torts § 700, Comment g. We do not think, however, that her attorney's fees and travel expenses for this action can be recovered.

■ Missouri follows the rule that attorney fees and other expenses incident to litigation are not ordinarily recoverable in damage actions. *Powell v. City of Osceola,* 636 S.W.2d 163, 164 (Mo.App.1982). We see no circumstances here which would have entitled plaintiff to attorney fees incurred in prosecuting this action. See *Osterberger v. Hites Construction Company,* 599 S.W.2d 221, 230 (Mo.App.1980); *Rook v. John F. Oliver Trucking Company,* 505 S.W.2d 157, 161 (Mo.App.1973).

However, the admission of improper evidence is not ordinarily a ground for reversal in a nonjury case, at least where it did not appear to have played a critical role in the court's decision. *In Interest of A.R.S.,* 609 S.W.2d 490, 491 (Mo.App.1980). Our primary concern is with the correctness of the trial court's decision and not the route by which it was reached. *Mattingly v. Bruckerhoff,* 603 S.W.2d 11, 13 (Mo.App. 1980). Whether the attorney fees and expenses of this litigation affected the court's decision on damages we cannot determine. Plaintiff requested in the prayer of the petition damages as well as attorney fees. The court's judgment did not set forth a separate item as attorney fees in this action and we presume that the court's judgment was correct and cannot prescribe error to it unless the error is clearly shown. It is practically impossible to predicate reversible error on the erroneous admission of evidence in a court tried case and the party advancing such a contention must demonstrate that there was an absence of sufficient competent evidence to support the decree. *Broyles v. Broyles,* 555 S.W.2d 696, 700 (Mo.App.1977). See also *Blair v. Blair,* 600 S.W.2d 143, 146 (Mo.App.1980). We now consider whether the actual damages awarded were supported by sufficient competent evidence.

Defendant would be liable to plaintiff for any damages she or William have caused plaintiff. Conspirators are joint tortfeasors and each is liable for all damages naturally flowing from the conspiracy, and each defendant is made responsible for the acts of the other in furtherance of a common design. *Mills v. Murray,* supra, 472 S.W.2d at 12–13. A parent wrongfully deprived of custody of his child may recover not only damages for loss of services but for loss of society and for emotional distress. *Brown v. Brown,* supra, 61 N.W.2d at 659; Restatement, Second, Torts § 700, Comment g.

Excluding the legal fees and travel expenses of this action, there was sufficient other substantial evidence to support the trial court's determination and under our review if there is substantial evidence to support the judgment, we must affirm it. Plaintiff's attorney fees, investigation and travel expenses incurred apart from this suit in her search for Wendie came to $7,104.54. When we consider the expenses not related to this action which were incurred by plaintiff in her search for Wendie, together with her loss of the services and society of Wendie, and plaintiff's emotional distress, the actual damages awarded were not excessive. Compare the awards in *Fenslage v. Dawkins,* 629 F.2d 1107 (5th Cir.1980); *Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D.N.Y.1978); *Gibson v. Gibson,* 15 Cal.App.3d 943, 93 Cal.Rptr. 617 (1971); *Brown v. Brown,* supra. Points three and four are denied.

Defendant's fifth and final point contends that the trial court erred in entering judgment for punitive damages because there was no substantial evidence of conduct on her part to support the award and that the amount of it was excessive. Defendant contends that neither legal nor actual malice was shown. We disagree. Legal malice was shown. Legal malice authorizes the award of punitive damages; actual malice is not necessary. *Baker v. Newcomb,* 621 S.W.2d 535, 537 (Mo.App. 1981). Legal malice does not mean hatred, spite or ill will as commonly understood but means the doing of a wrongful act intentionally without just cause or excuse. Id. An intentional wrongful act done without just cause or excuse is willful and warrants the submission of punitive damages. Id. 621 S.W.2d at 537–538.

Punitive damages are awarded for the purpose of inflicting punishment for wrongdoing and as an example and deterrent to similar conduct. *Beggs v. Universal C.I.T. Credit Corporation,* 409 S.W.2d 719, 724 (Mo.1966). An evil intent such as to justify punitive damages may be implied from reckless disregard of another's rights and interests. Id. 409 S.W.2d at 723. The evidence was sufficient to show that defendant intentionally tried to prevent plaintiff from exercising her rights of custody as provided in the court decrees and punitive damages were properly assessed.

The award of punitive damages is discretionary and cannot be measured by a precise formula for it varies according to the facts in each case and is not to be reversed except on a clear showing of an abuse of discretion. *Price v. Ford Motor Credit Company,* 530 S.W.2d 249, 256 (Mo. App.1975). The punitive damages here bore a reasonable relationship to the damage inflicted, see *Citizens Bank of University City v. Gehl,* 567 S.W.2d 423, 426 (Mo. App.1978), and we find no abuse of discretion in the amount of the award. Point five is denied.

The judgment is affirmed.

MAUS, P.J., and FLANIGAN, J., concur.